618 So.2d 1252 (1993)
Helen WOMBLE, By and Through Her Father, David Havard and on Behalf of the Heirs of Helen Womble
v.
SINGING RIVER Hospital, Dr. Atkinson Winans Longmire, Dr. James Spurgeon Weatherall, Emergency Room Group, Ltd., Singing River Hospital System Board of Trustees and its Members.
Helen WoMBLE, By and Through Her Father, David HAVARD and on Behalf of the Heirs of Helen Womble
v.
Dr. Wallace E. CALHOUN.
Nos. 90-CA-40, 90-CA-934.
Supreme Court of Mississippi.
March 25, 1993.
Rehearing Denied June 10, 1993.
Specially Concurring Opinion on Denial of Rehearing June 10, 1993.
*1254 Margaret P. Ellis, Kitchens & Ellis, Pascagoula, for appellant Womble.
James H. Heidelberg, Colingo Williams Heidelberg Steinberger & McElhaney, James W. Backstrom, John A. Banahan, Bryan Nelson Allen Schroeder & Backstrom, Pascagoula, for appellees Singing River Hosp. et al.
Robert C. Galloway, Galloway & Galloway, Gulfport, for appellee Calhoun.
En Banc.
Specially Concurring Opinion by Presiding Justice Dan M. Lee on Denial of Rehearing June 10, 1993.
BANKS, Justice, for the Court:
This is a consolidated appeal from two wrongful death actions arising out of the death of Helen Womble at the Singing River Hospital in Pascagoula on April 11, 1986. A single action was originally brought by the heirs of Helen Womble in the Jackson County Circuit Court. It named as defendants Singing River Hospital, the Singing River Hospital Board of Trustees, Dr. Clyde Gunn, and Singing River Hospital Emergency Room Physicians and Nurses (John Does 1-5). Subsequently, plaintiffs amended their pleadings to join the members of the Board of Trustees in their official capacities. They were also allowed to substitute Dr. Spurgeon Weatherall, Dr. Atkinson Winans Longmire, Emergency Room Group, Ltd., and Dr. Wallace Calhoun in place of the John Doe Defendants. In the interest of fairness, the trial judge believed it was necessary to bifurcate the proceedings and set a second, postponed trial date for the defendant last added to this action  Dr. Wallace Calhoun.
Eventually summary judgments were entered on varying grounds for all of the defendants brought into this matter, except Dr. Clyde Gunn. Singing River Hospital and its collective board of trustees were awarded summary judgments on the *1255 ground that they were shielded from suit by governmental immunity. The individual members of the board of trustees were granted summary judgment on the ground of qualified immunity. Dr. Longmire, Dr. Weatherall, and Emergency Room Group, Ltd. were granted summary judgments each on the alternative grounds of time bar and qualified immunity. Dr. Calhoun received a summary judgment based on time bar. He also received a 12(b)(6) dismissal for failure of the plaintiffs to state a claim against him. Ms. Womble's heirs have appealed to this court contesting each entry of summary judgment made by the trial judge and the 12(b)(6) dismissal granted to Dr. Calhoun.
Upon review, we affirm the entries of summary judgment in favor of Singing River Hospital, the Singing River Hospital Board of Trustees, the members of the Singing River Hospital Board of Trustees, and Dr. Calhoun. We find that statutory governmental immunity protects Singing River Hospital, its collective board of trustees, and the members of the board of trustees. The claim against Dr. Calhoun is barred by the running of the statutory period of limitations. We therefore need not address the propriety of the Rule 12(b)(6) dismissal entered in his favor. We reverse the summary judgments entered for Dr. Longmire, Dr. Weatherall, and Emergency Room Group, Ltd. and remand the actions against them to the Jackson County Circuit Court for further proceedings consistent with this decision. We do not find them shielded from liability by qualified immunity, and we do not find the actions against them time barred.

Facts
On March 29, 1986, Helen Womble went to the emergency room at Singing River Hospital, complaining of pain in her abdomen. She was examined by a physician in the emergency room, given medication, and discharged. Later discovery would show that the attending physician on that night was Dr. Spurgeon Weatherall. Ms. Womble presented herself again at the Singing River emergency room on the next night, March 30, 1986, with the same basic complaints. She was examined by another physician and was again sent home. Subsequent discovery would show that doctor was Dr. Atkinson Winans Longmire. Ms. Womble returned to Singing River Hospital the following morning, March 31, 1986. This time she was examined at approximately 9:00 a.m. by her personal physician, Dr. Wallace Calhoun, who had been called in. Dr. Calhoun had Ms. Womble admitted into the hospital, prescribed medication for her, and ordered various laboratory tests to be run on her. The tests included an X-ray, which was not read by Dr. Calhoun until much later that evening. Dr. Calhoun ordered a change of pain medication for the patient that afternoon. He examined Ms. Womble again that evening around 8:30 p.m., and he immediately called in Dr. Clyde Gunn, a surgeon, to examine the patient. It was determined that Ms. Womble had gone into shock. She was thereafter immediately rushed into surgery, where Dr. Gunn found her to be suffering from gangrene of the small intestines. Dr. Gunn proceeded to remove approximately six feet of Ms. Womble's small intestine.
Ms. Womble was thereafter placed in the intensive care unit. Her condition showed increasing signs of improvement until April 6, 1986. Her condition deteriorated steadily from that point onward. Ultimately, emergency procedures were necessitated for her on April 11, 1986. They were performed by another physician covering for Dr. Gunn, who was out of town. Ms. Womble died near 10:30 that night.
On March 28, 1988, the plaintiffs/appellants, the heirs of Helen Womble, by and through her father, David Havard, filed a wrongful death action against Singing River Hospital (hereinafter "SRH"), the SRH Board of Trustees, Dr. Clyde Gunn, and SRH Emergency Room Physicians and Nurses (John Does 1-5). Appellants alleged these John Doe Defendants to be unknown at that time. Appellants alleged that all defendants had committed various acts of negligence which had led to Ms. Womble's death. They also alleged that the hospital was liable for breach of a contract for treatment that it had with the *1256 decedent and for breach of warranty. On August 1, 1988, the plaintiffs filed a motion to amend their complaint to add as defendants certain Emergency Room Physicians that the plaintiffs had become aware of by name and the individual members of the SRH board of trustees in their official capacities.
On September 2, 1988, the trial judge entered an order staying the proceedings in this action due to other proceedings in the bankruptcy court regarding Dr. Charles Stroble, one of the members of the SRH Board of Trustees. On December 1, 1988, that stay was lifted, after a finding by the bankruptcy court that Dr. Stroble was not a proper party to the instant action. It was found that Dr. Stroble was not a member of the SRH Board of Trustees at the time of Helen Womble's alleged injuries.
On December 3, 1988, plaintiffs filed an amended complaint bringing in Dr. Atkinson Winans Longmire, Dr. Spurgeon Weatherall, Emergency Room Group, Ltd. and the members of the board of trustees in their official capacities. Emergency Room Group, Ltd. is a corporation comprised of all the emergency room physicians at SRH, including Doctors Longmire and Weatherall. Emergency Room Group, Ltd. had been contracted with by SRH to provide emergency room physician care at the hospital. In September 1989 plaintiffs moved to amend their complaint to join Dr. Wallace Calhoun into this suit. They were aware that Dr. Calhoun had seen Helen Womble on March 31, 1986, but they claimed that they had had no reason to suspect any negligence on Doctor Calhoun's part until Dr. Gunn indicated in his deposition in June 1986 that Ms. Womble may have stood a higher chance of survival had some method been used to diagnose her illness and bring in a surgeon earlier. Appellants were allowed to add Dr. Calhoun on November 7, 1989, as one of the John Doe Defendants.
Ultimately, the Jackson County Circuit Court granted summary judgment to SRH and its collective board of trustees on the ground of governmental immunity. The members of the SRH Board, who were sued in their official capacities, were each granted summary judgment based on qualified immunity. Dr. Longmire, Dr. Weatherall, and Emergency Room Group, Ltd. were each granted summary judgment based on the alternative grounds that they had qualified immunity and that the applicable two-year statute of limitations had run before they were joined into this suit. Dr. Calhoun was granted summary judgment based on the statute of limitations. In the alternative, he was granted a 12(b)(6) motion for the plaintiffs' failure to state a claim against him. It is from the entry of those summary judgments and the 12(b)(6) dismissal in favor of Dr. Calhoun that Ms. Womble's heirs now appeal to this court.

I. Governmental Immunity
Appellants, the heirs of Helen Womble, first contend that the trial court erred in granting summary judgment to the hospital and board of trustees on the basis of governmental immunity. More precisely, the appellants submit that genuine issues of material fact exist regarding whether the hospital and its board of trustees had waived their immunity under Mississippi Code Ann. § 41-13-11 (1972), and that consequently summary judgment was inappropriately entered by the circuit court in favor of these defendants. Singing River Hospital and its board of trustees counter that no factual circumstances exist that could reasonably be determined to constitute a waiver. For this reason, they contend that the circuit court properly entered a summary judgment in their favor on the ground of governmental immunity.
It is a well-established principle under Mississippi law that summary judgments, in whole or in part, should be granted with great caution. Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss. 1983). The trial judge must carefully review all pleadings, depositions, answers to interrogatories and admissions on file. Id. All evidentiary matters must be considered in the light most favorable to the party against whom judgment is sought. Id. Summary judgment may only be entered where, based on such a review, it is clear *1257 that the movant has met his burden of demonstrating that no genuine issue as to any material fact exists and that the movant is entitled to judgment as a matter of law. Id. Thus, in order for the trial court's grant of summary judgment to SRH and its board of trustees to withstand review from this court, it must be patently clear that § 41-13-11 immunizes SRH and its board of trustees from suit without any genuine issue.
Section 41-13-11(1) of the Code provides: Except to the extent provided in subsection (2) of this section... each owner or board of trustees ... shall not be liable for and shall be immune from suit at law or in equity on account of any wrongful or tortious act or omission by any such governmental entity or its employees relating to or in connection with any activity or operation of any such community hospital, notwithstanding that any such act or omission constitutes or may be considered as the exercise or failure to exercise any duty, obligation or function of a governmental, proprietary, discretionary or ministerial nature and notwithstanding that such act or omission may or may not arise out of any activity, transaction or service for which any fee, charge, cost or other consideration was received or expected to be received in exchange therefor.
Miss. Code Ann. § 41-13-11 (Supp. 1991). Appellants argue that there are five separate ways in which SRH and its board of trustees waived this immunity. If it is found that any one of these claims of waiver raises a genuine issue, we are compelled to rule that the entries of summary judgment for SRH and its Board was improper.

A. Contract for Treatment

Appellants' first claim is that SRH entered into a contract for treatment with Helen Womble and thereby waived its immunity from suit for breach of that contract. For support, appellants point to Miss. State Dept. of Public Welfare v. Howie, 449 So.2d 772 (Miss. 1984). In Howie, the Court held that "when the legislature authorizes the state's entry into a contract, the state necessarily waives its immunity from suit for breach of that contract." 449 So.2d at 777. Appellants also direct the Court's attention to Cig Contractors v. Mississippi State Building Commission, 399 So.2d 1352 (Miss. 1981), where Justice Walker, writing for the Court, expressed that he "doubt[ed] seriously that this court would uphold a claim of sovereign immunity in contractual matters between a subdivision of the State and individuals doing business with it." Cig at 1355. He stated in addition that:
Where the state has lawfully entered into a business contract with an individual, the obligations and duties of the contract should be mutually binding and reciprocal. There is no mutuality or fairness where a state or county can enter into an advantageous contract and accept its benefits but refuse to perform its obligations.
Id.
Howie presented a scenario where the Mississippi State Department of Public Welfare was found to be a holdover tenant on a landlord's property. The landlord sued for specific performance of an implied lease renewal and rent in arrears based on the renewal. The Department of Public Welfare had been authorized by the Legislature's Capitol Commission to enter into a lease agreement on the property. The State attempted to invoke the doctrine of sovereign immunity to shield itself.
In Cig, Cig Contractors, Inc. and the Mississippi State Building Commission entered into a contract on February 17, 1975, calling for Cig to construct a portion of a chemistry building at the University of Mississippi. 399 So.2d at 1353. Cig was responsible for the concrete, masonry, and general contracting work on the project. The contract specified that "Owner will provide soils testing and inspection service for quality control testing during earthwork operations." Id. at 1354. The suit claimed that the Building Commission had breached its duty to test and inspect the soil and that such breach required Cig to remove and reconstruct portions of work they had already completed. Cig sued the Building Commission for the incremental *1258 cost of the work that had to be reperformed. The lower court granted summary judgment to the Building Commission on the basis of sovereign immunity. This Court reversed and remanded, holding that the Building Commission could be held liable for its breaches of contract. Id. at 1355.
This Court has ruled unequivocally in the past that suits grounded in tort are barred from prosecution against the State and its agencies by the doctrine of sovereign immunity. Employers Insurance of Wausau v. Mississippi State Highway Commission, 575 So.2d 999, 1002 (Miss. 1990); and Strait v. Pat Harrison Waterway District, 523 So.2d 36, 40 (Miss. 1988). In Strait v. Pat Harrison Waterway District, 523 So.2d 36, 41 (Miss. 1988), the appellant sued the waterway district to recover for injuries she sustained while patronizing a waterslide amusement park operated by the district. 523 So.2d at 36-37. At trial, the appellant proceeded solely on a negligence theory. Id. at 41. On appeal, the appellant attempted to argue that the Pat Harrison Waterway District entered into a business relationship, contractual in nature with the appellant, and that by accepting the benefits of that relationship, the District incurred binding contractual duties. The Court refused to hear the claim, because it had not been raised in the lower court. Id.
In Employers Insurance of Wausau v. Mississippi State Highway Commission, 575 So.2d 999 (Miss. 1990), the Mississippi State Highway Commission contracted with Cook Construction to resurface a portion of a highway in Mississippi. Cook was insured by Employers Insurance of Wausau. The contract required Cook to apply a pavement mixture designed and manufactured in accordance with plans and specifications provided by the Commission. Cook followed the plans and specifications of the Commission in manufacturing the pavement mixture, but the mixture was defective, resulting in an unreasonably slick highway. Due to this condition, three different automobiles on three different occasions had accidents causing severe injuries to three individuals. Each of these three individuals either filed suit against Cook, or made demand on Cook for personal injury damages. Cook's liability insurance carriers, which included Employers Insurance of Wausau, reached compromise settlements with these individuals, and were assigned their respective claims against the Commission. Wausau and the other carrier brought suit against the Mississippi State Highway Commission, alleging among other things that the Commission had breached an implied contractual warranty that plans and specifications provided by the Commission to Cook for resurfacing the highway would provide a reasonably safe highway. The Court held that Wausau, as assignee of the rights of the three injured individuals, could not maintain a suit on the contract between the Commission and Cook. 575 So.2d 1001. The only recourse the injured persons had against the Commission were actions which sounded in tort. Id. Wausua could only stand in the same shoes as those whose claims it asserted. Id. Therefore, the Court ruled that Warsau's actions were barred by the doctrine of sovereign immunity. Id.
The claim of the appellants here is essentially that the hospital failed to exercise due care in performing its contractual duty to provide treatment for the decedent Helen Womble. It possesses both tort and contractual characteristics. The facts of this case are such, however, that it does not become necessary to address on whether the claim asserted here by appellants is more analogous to those asserted in Howie and Cig or those asserted in Employers Insurance of Wausau and Strait. In this case, § 41-13-11 of the Mississippi Code contains a mandate expressly stipulating that:
Except to the extent provided in subsection (2) of this section ... each owner or board of trustees .. . shall not be liable for and shall be immune from suit at law or in equity on account of any wrongful or tortious act or omission by any such governmental entity or its employees relating to or in connection with any activity or operation of any such community hospital, notwithstanding that *1259 any such act or omission constitutes or may be considered as the exercise or failure to exercise any duty, obligation or function of a governmental, proprietary, discretionary or ministerial nature and notwithstanding that such act or omission may or may not arise out of any activity, transaction or service for which any fee, charge, cost or other consideration was received or expected to be received in exchange therefor. (emphasis supplied)
Miss.Code § 41-13-11 (1972). Section 41-13-11 clearly seeks to exempt county hospitals from liability for actions which may fail to meet a prescribed duty. The statutory language "notwithstanding that such act or omission may or may not arise out of any activity, transaction or service for which any fee, charge, cost, or other consideration was received or expected to be received in exchange therefor" also evinces a clear intent on the part of the legislature to apply the immunity to duties which arise by way of contract. There were no analogous statutes expressly protecting the State Department of Public Welfare in Howie or the State Building Commission in Cig. We find that distinction to be critical. Therefore, we hold today that where the Legislature has manifested a clear intent to immunize the agencies of the State from suits which arise out of the alleged failures by the agency to fulfill duties implicit in a contractual relationship, that policy will be applied by this Court to bar suits in contract as well as in tort.

B. Requirement that doctors carry liability insurance

Appellants direct their second contention of waiver at SRH's requirement that all emergency room physicians maintain liability insurance covering their professional services at the hospital as a condition of employment. Section 41-13-11(2) grants the board of trustees of any community hospital the authorization to obtain any kind and amount of liability insurance as the board deems appropriate for the operation of the hospital and to pay for such insurance out of the operating funds of the hospital. Miss. Code Ann. § 41-13-11(2) (Supp. 1991). Another provision of § 41-13-11 specifies that:
If liability insurance is in effect ... suit may be maintained by anyone affected to the extent of such insurance available to satisfy any judgment rendered, [and] immunity from suit is waived to the extent of such liability insurance available to satisfy any judgment rendered ...
Miss. Code Ann. § 41-13-11 (Supp. 1991). From this, appellants contend that by requiring their emergency room physicians to carry liability insurance, SRH waived its own immunity from suit to the extent of the malpractice coverage carried by the emergency room physicians. They rely primarily on a line of cases which have imposed vicarious liability on hospitals for the negligent acts of their employees. Their argument is essentially that if hospitals covered by § 41-13-11 carried their own liability insurance, they could be held vicariously liable for the negligent acts of their employees, and that these hospitals should not be able to avoid such vicarious liability simply by requiring physicians to carry their own malpractice insurance.
Appellants cite no authority supporting such an extension of the doctrine of vicarious liability, and we can find no reason for doing so here. Section 41-13-11 represents the public policy of this State, as spoken through the Legislature, that community hospitals will only be deemed to have waived the tort immunity that has been bestowed upon them where they have purchased their own liability insurance and that such waiver shall only extend up to the amount of such coverage purchased. The statute is clear on this point. Therefore, we reject this contention that SRH's requirement that its doctors purchase malpractice insurance constitutes a waiver of SRH's tort immunity.

C. Indemnification Policy

The SRH Board of Trustees had adopted a resolution that it would indemnify employees occupying certain job positions for expenses incurred in defending suits or paying judgments incurred in suits for negligence arising out of their employment up to $100,000 per person and $1,000,000 per *1260 accident. Appellants contend that by adopting this resolution, the Board waived the hospital's immunity up to the extent of the indemnification limits.
Section 41-13-11(2) contains the provision that:
The Board of Trustees may ... indemnify, either by the purchase of insurance or directly, where funds are available, in whole or in part, any trustee, officer, agent, volunteer or employee of a community hospital for actual personal expenses incurred in the defense of any suit, or judgments resulting from said suit ... for alleged negligent or wrongful conduct committed while under the employment of or while providing service to said community hospital.
Miss. Code Ann. § 41-13-11(2) (Supp. 1991). The statute goes on to declare:

No authority granted by this subsection and no act of the board of trustees of any community hospital or of any agent, representative or employee thereof shall be construed as a waiver of the immunity of such hospital or its board of trustees from suit for negligent, tortuous or unauthorized acts of the said board of trustees, members of said board of trustees, agents, servants or employees or volunteers or community hospital, and such immunity as presently exists is specifically retained and recognized. If liability insurance is in effect, however, suit may be maintained by anyone affected to the extent of such insurance available to satisfy any judgment rendered. However, immunity from suit is only waived to the extent of such liability insurance available to satisfy any judgment rendered, and a judgment creditor shall have recourse only to the proceeds or right to proceeds of such liability insurance.
Miss. Code Ann. § 41-13-11(2) (Supp. 1991).
Appellants recognize our precedents to the effect that a waiver of sovereign immunity can be implied only where the statute is clear and unambiguous as it relates to sovereign immunity. See French v. Pearl River Valley Water Supply District, 394 So.2d 1385 (Miss. 1981); Lowndes County v. Miss. State Highway Commission, 220 So.2d 349 (Miss. 1969). They somehow make the contention, however, that the Legislature clearly intended that a limited waiver apply to § 41-13-11, and that it would be illogical to conclude that the Legislature intended that immunity would be waived to the extent of insurance available and not to the amount of indemnification available. Appellants cite no case support for such a reading. Further, the language of the statute explicitly limits any waiver of immunity to the amount of liability coverage purchased by the hospital. Any contrary reading is not only unsupported by caselaw, but contrary to the express wording of the statute. Moreover, Singing River Hospital did not have any liability insurance to fund indemnifications, and, as such, there can be no waiver even if we accepted the argument, which we do not.

D. Self-Insurance through "excess revenues"
Section 41-13-35(5)(h) of the Mississippi Code grants the board of trustees of community hospitals the authority to "file suit on behalf of the community hospital and to defend and/or settle claims against the community hospital and/or its board of trustees." Miss. Code Ann. § 41-13-11 (Supp. 1991). Any revenues that Singing River Hospital generated over its operating expenses for any given period went into the hospital's balance sheet account entitled "excess revenues." These funds were carried forward to meet future expenses and revenue shortfalls incurred by the hospital.
Appellants argue that, traditionally, SRH has used funds from its "excess revenues" account to settle claims and pay judgments pursuant to the authority granted to the Board by § 41-13-35(5)(h). Thus, appellants claim that by paying for settlements and judgments out of its "excess revenues", SRH has self-insured itself and that SRH has waived its immunity to the extent of its "excess revenues." First, there is no support in the record for appellants' claim that SRH has used funds from its "excess revenues" account for such purposes. Furthermore, even if SRH had used its "excess *1261 revenue" funds for such purposes in the past, there is no support  either in Title 41 or the caselaw construing it  for the proposition that such expenditures would constitute a waiver of immunity with regard to such future "excess revenues."

E. Public Interest

Appellants' final contention regarding waiver is that the rationale which has traditionally restricted the application of the "proprietary versus governmental acts" dichotomy for immunity to municipalities is unsound, and that the public interest would be best served by extending the application of that dichotomy to acts by community hospitals. In essence, appellants seek to have this Court extend this test for immunity beyond acts by municipalities to acts by the State and its political subdivisions as well. Appellants argue further that if this dichotomy were so applied to the operation of the Singing River Hospital, those operations would be deemed proprietary in nature and therefore not subject to immunity.
Essentially, this argument is the same as one that was advanced by the plaintiff in Strait v. Pat Harrison Waterway District, 523 So.2d 36 (Miss. 1988). In Strait, a patron sued the waterway district to recover for injuries he sustained at a waterslide amusement park operated by the district. Strait at 36. One of the contentions advanced by the plaintiff was that the Pat Harrison Waterway District was engaged in a proprietary enterprise to generate revenue and that the District waived its immunity for that activity. Id. at 40. In response, this Court said:
There is much authority in Mississippi supporting this proprietary/governmental distinction, but it has always been applied to municipalities. (citations). According to Prosser, the proprietary/governmental test for waiver of immunity is peculiar to municipalities and is "different both in origin and scope from the `sovereign' or governmental immunity of the state." Prosser, The Law of Torts, § 131, p. 1051 (5th ed. 1984).
The case sub judice is controlled by caselaw established prior to Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982), and by the Sovereign Immunity Act of 1984. MCA § 11-46-6 (Supp. 1987). In accordance with the majority rule, this law applies the proprietary/governmental function distinction only to cases involving municipalities. Since the present case is not of that class, the proprietary nature of appellee's conduct is of no consequence in determining whether sovereign immunity is waived.
Strait at 40. Re-examination of the restriction of the application of the governmental/proprietary distinction to municipalities may well be in order. That dichotomy arises, however, out of the application of judicially imposed sovereign immunity. The entity here involved enjoys explicit statutory immunity. We therefore decline the invitation to re-visit the proprietary distinction.

II. Qualified Immunity
The trial court granted summary judgment on the ground of qualified immunity to the members of the board of trustees for Singing River Hospital, Dr. Jack Longmire, Dr. Spurgeon Weatherall, and Emergency Room Group, Limited. The appellants assign error to each of these judgments.

A. Members of the SRH Board of Trustees

With respect to governmental immunity, the appellants incorporate all of their arguments regarding waiver of immunity by the hospital against the individual members of the board of trustees. First, it should be noted that suing public officials in their official capacities is tantamount to suing the State or its affiliated entities themselves, and any immunities protecting such State entities will likewise shield the public officials affiliated with them when they are sued in their official capacities. Winters v. Lumley, 557 So.2d 1175, 1177 (Miss. 1989). The Winters Court went on to hold that where a statutory provision clearly and unambiguously waives immunity for a State entity under a specified set of circumstances, that waiver applies equally as well under those circumstances to public officials affiliated with that entity who are *1262 sued in their official capacities. Id. at 1178. In Winters, the Court was dealing with a claim that the governmental immunity for members of the County Board of Supervisors of Washington County was waived to the extent of the liability insurance that had been taken out on their behalf where § 19-7-8(2) of the Mississippi Code provided:
If liability insurance is in effect in such county, such county may be sued by anyone affected to the extent of such insurance carried; provided, however, that immunity from suit is only waived to the extent of such liability insurance carried and a judgment creditor shall have recourse only to the proceeds or right to proceeds of such liability insurance.
Id. at 1177; Miss. Code Ann. § 19-7-8(2) (Supp. 1992).
In the instant case, the only statutory waiver of immunity we have for community hospitals  § 41-13-11(2)  is a mirror image of § 19-7-8(2). It provides in relevant part:
If liability insurance is in effect ... suit may be maintained by anyone affected to the extent of such insurance available to satisfy any judgment rendered. However, immunity from suit is only waived to the extent of such liability insurance available to satisfy any judgment rendered, and a judgment creditor shall have recourse only to the proceeds or right to proceeds of such liability insurance.
Miss. Code Ann. § 41-13-11(2) (Supp. 1991). Unlike in Winters, however, there was no liability insurance purchased by SRH either for itself or for members of the board of trustees. Thus, there can be no waiver under § 41-13-11(2).
Appellants also seek to incorporate each of the remaining claims of waiver noted above against the members of the board of trustees. Those claims are again rejected for the same reasons that they are rejected above. Appellants also argue that the board members are not protected by the common law shield of qualified immunity for public officials. Since we have concluded that members of the board of trustees are immunized from suit by § 41-13-11's shield of governmental immunity, it is not necessary to address this argument.

B. Dr. Longmire, Dr. Weatherall, & Emergency Room Group, Ltd.

In the past, this Court has held that physicians engaged in public service are qualifiedly immune from suit for medical treatment decisions made during the course of that service. Marshall v. Chawla, 520 So.2d 1374 (Miss. 1988); and Hudson v. Rausa, 462 So.2d 689 (Miss. 1984). Hudson is the genesis of this rule. In Hudson, the widow of a deceased factory worker brought suit against a physician, who had prescribed medication for the deceased to treat his case of infectious tuberculosis. She charged that the prescribed medication had caused her husband's death. The physician was employed by the State Board of Health to formulate and carry out policies to stop the spread of certain communicable diseases. The widow also joined a nurse, who worked in conjunction with the doctor, and who was also employed by the State Board of Health. The Court upheld grants of summary judgment to the physician and the nurse. We held that the physician and the nurse were immunized from suit for their discretionary decisions made either in instituting their program or administering treatment pursuant to their program. 462 So.2d at 695-696.
Hudson was followed in Marshall. There, the husband of the plaintiff was admitted into the emergency room of a state eleemosynary hospital late one night complaining of a severe headache and vomiting. Defendant, a physician on the staff of that hospital, was on duty at the time. Defendant did not report to the emergency room, but told the staff to administer dramamine to the patient. The man was taken home, where he suffered a stroke and died approximately ten hours later. The deceased's widow brought a wrongful death action against the doctor. This Court affirmed a lower court dismissal of the case, holding that the treatment decisions of the doctor were given qualified immunity. 520 So.2d at 1377.
The instant case gives us an opportunity to revisit those decisions, and today *1263 we find those decisions to have been erroneous to the extent they extended medical personnel in public service qualified immunity for treatment decisions. Thus, we overrule Hudson and Marshall to that extent. The discretion exercised by medical personnel in making treatment decisions is not the sort sought to be protected by the common law qualified immunity bestowed upon public officials.
Common law qualified immunity has traditionally sought to protect the discretion of public officials so that those officials would not be deterred by the threat of suit from making decisions and formulating policies that are in the public good. State of Mississippi for the Use and Benefit of Brazeale v. Lewis, 498 So.2d 321, 322 (Miss. 1986); Pruett v. City of Rosedale, 421 So.2d 1046, 1052 (Miss. 1982); and Hudson, 462 So.2d 689, 695 (citing Gregoire v. Biddle, 177 F.2d 579, 581 (2nd Cir.1949) (Learned Hand, J.)); See also, generally, Wyatt v. Cole, 504 U.S. ___, ___, 112 S.Ct. 1827, 1832-1833, 118 L.Ed.2d 504, 514-515 (1992) (contains thorough discussion of the history of and rationales underlying common law public official immunity). In Lewis, this Court noted that qualified immunity for the discretionary acts of public officials has evolved "[i]n order to allow our lawmakers and government officials to participate freely and without fear of retroactive liability in risk-taking situations requiring the exercise of sound judgment." 498 So.2d at 322. In Gregoire v. Biddle, Justice Learned Hand said of qualified immunity:
The justification for doing so is that it is impossible to know whether the claim is well-founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.
177 F.2d 579, 581 (quoted in Hudson, 462 So.2d at 695). We noted a further rationale for removing such policy decisions from the purview of the Courts in Pruett v. City of Rosedale, where we said
Judicial review of basic policy-making decisions continues to be regarded by many as inappropriate because courts have no standards by which to judge such decisions. Judges and jurors are in no better position to evaluate the reasonableness of policy determinations than are those officials who are charged with making them. The reasonable man standard of tort law is not an appropriate measure for the political, social or economic desirability of government programs and the methods selected for pursuing them. State tort standards cannot adequately control those government decisions in which, to be effective, the decision maker must look to considerations of public policy and not merely to established professional standards or to standards of general reasonableness.
421 So.2d at 1051-52.
None of these considerations undergirding common law qualified immunity are applicable to medical treatment decisions. First of all, there is nothing inherently governmental about decisions regarding individual medical treatment. They do not involve the formulation of public policy in any respect. Therefore, the notion of promoting governmental decisions that are in the public good is completely inapplicable. Second, the fact that a physician or other medical provider is employed by the State *1264 does not expose that physician to any greater threat of suit than he would otherwise face in private practice. He therefore will be no more discouraged by the threat of suit from taking actions he thinks are prudent, than he ordinarily would be as a private physician. Furthermore, the threat of suit will not discourage physicians from seeking and accepting government employment, because they will face the exact same potential exposure to liability that they would as private physicians. Finally, the judicial system is perfectly capable of adjudicating the reasonableness of medical treatment decisions. Our courts do it every day in medical malpractice actions heard across this state. The medical treatment decisions made by medical personnel at state health institutions are no different from the private medical care decisions that are currently being judged.
This view is one that has been taken by a majority of the courts which have ruled on whether common law qualified immunity extends to cover medical treatment decisions. See Kiersch v. Ogena, 230 Ill. App.3d 57, 172 Ill.Dec. 335, 595 N.E.2d 696 (1992); Gould v. O'Bannon, 770 S.W.2d 220 (Ky. 1989); Protic v. Castle Co., 132 Wis.2d 364, 392 N.W.2d 119 (1986); Cooper v. Bowers, 706 S.W.2d 542 (Mo. App. 1986); James v. Jane, 221 Va. 43, 282 S.E.2d 864 (1980); Comley v. Emanuel Lutheran Charity Bd., 35 Or. App. 465, 582 P.2d 443 (Or. App. 1978); and Henderson v. Bluemink, 511 F.2d 399 (D.C. Cir.1974). But see de Sanchez v. Genoves-Andrews, 161 Mich. App. 245, 410 N.W.2d 803 (1987). Henderson is one of the leading cases in this tradition. In that case, an army doctor argued that his status as an army officer insulated him from liability for alleged acts of negligence in treating and diagnosing a patient's illness. The United States Court of Appeals for the District of Columbia Circuit held that common law qualified immunity did not extend to protect decisions by the doctor which were strictly medical in nature. 511 F.2d at 401-403. In doing so, it noted several of the same considerations which influence this Court to hold that medical treatment decisions are not protected by common law qualified immunity. The Court of Appeals said:
The chief policy underlying the creation of immunity for lower governmental officials is mainly that which stems from the desire to discourage "the fearless, vigorous, and effective administration of policies of government." However, that policy is not applicable to the exercise of normal medical discretion since doctors making such judgments would face the same liability outside of government as they would face if the complaint below is upheld. [Therefore], the threat of liability for negligence would not deter the fearless exercise of medical discretion within government service any more than the same threat deters the exercise of medical discretion outside of government. Holding government medical personnel to the same standards of care which they would face outside of government service in no way burdens their public responsibility or deters entry into government service or the vigorous exercise of public responsibility once having entered that service.
Id. at 402-403.
This Court noted these considerations in Marshall v. Chawla but chose, nevertheless, to follow its decision in Hudson v. Rausa. It did so based on the following rationale:
... It is obviously true that not all forms of discretion are alike and in some other spheres of government the rule laid down in Hudson might have to be modified to account for that fact. But in the case of medical doctors in public service, special circumstances are present which make a broader grant of immunity sound policy. In saying that the "threat of liability would not deter the fearless exercise of medical discretion within government service any more than the same threat [would do so] outside the government," the Henderson court overlooked the objection that such vulnerability might very well deter doctors from entering government service in the first place. The protection of qualified immunity no doubt serves as a powerful incentive to many doctors to serve in state eleemosynary *1265 institutions and this in turn, makes medical care available to many who [would] not be able to afford medical care in private facilities.
520 So.2d at 1377. On further reflection we find this reasoning faulty. It reflects fact finding which is legislative in nature and of dubious validity. Moreover, it promotes a goal beyond the pale of the traditional justification for qualified immunity. Today, we hold that common law qualified public official immunity will be restricted to its designed purpose. Accordingly, it will not be extended to decisions that involve only individual medical treatment. Those decisions will be judged on the same standards as if made by private providers. Decisions made by medical personnel engaged in public service will continue to be protected to the extent that they involve the formulation and implementation of public policy.
The actions of Dr. Longmire and Dr. Weatherall that are at issue in this case deal only with the treatment of Helen Womble in the SRH Emergency Room on the nights of March 29 and 30, 1986. They did not involve formulating or implementing public policy. Therefore, they are not afforded protection in any respect by the common law qualified immunity.

III. Statute of Limitations
The trial court granted summary judgment to Dr. Longmire, Dr. Weatherall, Dr. Calhoun, and Emergency Room Group, Ltd. on the ground that each of them was added after the applicable two-year statute of limitations had run on the appellants' claim. Appellants contest the entry of summary judgment for each of these parties. The decedent Helen Womble was seen in the emergency room of SRH on the three consecutive days March 29, 30, and 31 of 1986. She was admitted into the hospital on March 31, and surgery was performed on her that same night. Ms. Womble died on April 11, 1986. Plaintiffs, the heirs of Helen Womble, filed their original complaint on March 28, 1988 against Dr. Clyde Gunn, the physician who performed the surgery on Ms. Womble on March 31, 1986, Singing River Hospital, and Singing River Emergency Room Physicians/Nurses  John Does 1-5. On December 8, 1988, the plaintiffs filed an amended complaint, joining Dr. Longmire, Dr. Weatherall, and Emergency Room Group, Ltd. as defendants. On November 7, 1989, the trial court granted a motion from the plaintiffs to have Dr. Calhoun listed as one of the John Doe defendants.
Appellants first contend that the applicable statute had not run when the respective parties in question were added to this lawsuit. Further, they argue that even if § 15-1-36's two-year period had run on this matter, the relation-back provisions of Rules 9(h) and 15(c) of the Mississippi Rules of Civil Procedure are satisfied under the facts of this case, and that therefore their claim should not be barred. The appellees make the arguments to the contrary on each point. They also direct the Court's attention to the case of Lowery v. Statewide Healthcare Service, 585 So.2d 778 (Miss. 1991). A company providing nursing personnel to a hospital had been joined through a theory of respondeat superior for alleged malpractice committed by one of the nurses they supplied. Lowery at 779. There, the court held that where the liability of such entities is predicated solely upon the doctrine of respondeat superior, the bar of suit against the employee by § 15-1-36 will likewise bar the action against the master. Id.
Section 15-1-36 of the Mississippi Code provides:
Except as otherwise provided in this section, no claim in tort may be brought against a licensed physician, osteopath, dentist, hospital, nurse, pharmacist, podiatrist, optometrist, or chiropractor for injuries or wrongful death arising out of the course of medical, surgical, or other professional services unless it is filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered.
Miss. Code Ann. § 15-1-36 (Supp. 1991). Mississippi caselaw has reaffirmed the explicit language of § 15-1-36 and has consistently *1266 applied the rule that the two-year statute of limitations in medical malpractice actions does not commence running until the patient discovers or should have discovered that he has a cause of action. E.g., Smith v. Sanders, 485 So.2d 1051 (Miss. 1986); Parham v. Moore, 552 So.2d 121 (Miss. 1989). The focus is on the time that the patient discovers or should have discovered by the exercise of reasonable diligence, that he probably has an actionable injury. Smith at 1052. Moreover:
The operative time is when the patient can be held to have knowledge of the injury itself, the cause of the injury, and the causative relationship between the injury and the conduct of the medical practitioner.

Id.
In the instant case, the appellees Dr. Longmire, Dr. Weatherall, and Emergency Room Group, Ltd. were added to this suit approximately two years and eight months after the death of Helen Womble. Applying Smith, the appropriate inquiry here is whether the exercise of reasonable diligence should have led the appellants to discover the defendants' alleged negligent acts and their respective connections to Helen Womble's death at some time prior to the date two years preceding the date on which defendants were added to this lawsuit?
Appellants contend that even though they knew that the decedent died on April 11, 1986, they could not have known of the causative relationship between the alleged acts of negligence by Doctors Longmire and Weatherall and the death of Helen Womble until they had a reasonable opportunity to obtain all the medical records and have them examined by a medical expert.
The running of the statute of limitations under § 15-1-36 may be tolled for a reasonable period of time to allow plaintiff to acquire and peruse the appropriate medical records, but the facts of this case do not indicate that appellants exercised reasonable diligence in attempting to discover the alleged negligent acts of Dr. Longmire and Dr. Weatherall. Appellants did not make a request to view SRH's medical records relating to the treatment of Helen Womble until almost two years after Ms. Womble's death. The records ultimately received clearly reflected that Dr. Weatherall and Dr. Longmire were the treating physicians on March 29, 1986, and March 30, 1986, respectively. Under any reasonable interpretation of the statute § 15-1-36's two-year period had passed before the joinder of Dr. Weatherall, Dr. Longmire, and Emergency Room Group.
Dr. Calhoun was not added to this suit until almost three years and seven months had passed since Helen Womble's death. Appellants contend that they had no reason to suspect any negligence on Dr. Calhoun's part until he was implicated in a deposition taken of Dr. Clyde Gunn in June 1989. That was approximately five months before Dr. Calhoun was added. The record reflects, however, that there were medical records which reflected the extent of Dr. Calhoun's treatment of the decedent on the day she was admitted to the hospital. The exercise of reasonable diligence should have led appellants to discern the extent of Dr. Calhoun's involvement in this case and join him in this suit long before the passage of three years and seven months after the Helen Womble's death.
Appellants have asserted in the alternative that they are entitled to relief from the running of the statutory period by application of Rules 9(h) and 15(c) of the Mississippi Rules of Civil Procedure. Those concerns must be addressed before it can be said the appellants' claim is barred by § 15-1-36.

A. Rule 9(h)

Appellants contend that even if it had been decided that more than two years had transpired between the time they should have discovered their cause of action against the appellees through reasonable diligence and the time they added the appellees to this action, they satisfied MRCP 9(h), which provides an exception to the ordinary effects of the running of the statute of limitations. MRCP 9(h) provides:
When a party is ignorant of the name of an opposing party and so alleges in his *1267 pleading, the opposing party may be designated by any name, and when his true name is discovered the process and all pleadings and proceedings in the action may be amended by substituting the true name and giving proper notice to the opposing party.
MRCP 9(h). Rule 15(c) of the MRCP contains the additional language that:
An amendment pursuant to Rule 9(h) is not an amendment changing the party against whom a claim is asserted, and such amendment relates back to the date of the original pleading.
MRCP 15(c).
Appellees respond primarily with two claims: 1) the appellants knew who the added parties were when they filed their original complaint, and 2) if the appellants did not know who all the relevant parties were at the time they filed suit, it was only because the appellants had not exercised due diligence in attempting to gain such knowledge. There is a dearth of Mississippi law on the application of Rule 9(h). It is a principle of general application, though, that ignorance of the opposing party for fictitious party practice extends beyond mere lack of knowledge of the opposing party's name. Even if the plaintiff knows the true name of the person, he is still ignorant of his name if he lacks knowledge of the facts giving him a cause of action against the that person. See, e.g., Braceda v. Gamsby, 267 Cal. App.2d 167, 72 Cal. Rptr. 832 (1968); Columbia Engineering v. Epsey, 429 So.2d 955 (Ala. 1983).
Womble admits that no fair construction of the pleadings would lead to the conclusion that Dr. Calhoun was identified, even as a John Doe. For that reason this rule cannot save the action against him, in any event. As to all, as noted above, there were numerous medical records on file at SRH indicating the extent to which Doctors Weatherall, Longmire, and Calhoun had participated in the treatment of Helen Womble. A reasonably diligent inquiry by the appellants into the history of the deceased's medical treatment would have revealed to appellants the identities of the persons they sought to identify categorically as "Emergency Room Physicians and Nurses (John Does 1-5)". Therefore, we hold that appellants were not ignorant of the identities of appellees in the sense contemplated by Rule 9(h). Consequently, no relief is provided appellants from the running of the statutory period by Rule 9(h).

B. Rule 15(c)

Since we have determined that the provisions of 9(h) have not been satisfied in this case, any amendment made by appellants to add additional parties must satisfy the provisions of Rule 15(c) regarding "changing the party against whom a claim is asserted" to prevent time bar by § 15-1-36. MRCP Rule 15(c) provides:
Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment:

(1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and
(2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.
MRCP 15(c).
The record indicates that as early as April 20, 1988, the insurance carrier for Dr. Weatherall and Dr. Longmire, Medical Assurance Company of America, was sending correspondence regarding this lawsuit to a lawyer that it had already retained to represent the doctors. The doctors received carbon copies of that April 20, 1988, letter. Further, the record reflects that the doctors were receiving communication from that retained counsel regarding this lawsuit and their involvement in it as early as April 21, 1988. The record also shows that *1268 Weatherall and Longmire began meeting with that retained counsel sometime around April 21, 1988. We take these facts as providing clear evidence that Doctors Longmire and Weatherall were aware of this lawsuit and its nature at least by the time frame of April 20 and 21st of 1988.
Helen Womble died in SRH on April 11, 1986, after having been treated by Doctor Weatherall on March 29, 1986, and by Doctor Longmire on March 30, 1986. We noted above that in a case such as this, the statutory period of limitations should be tolled for a reasonable period of time to allow plaintiffs to acquire and peruse the medical records that would provide a basis for any alleged negligence. April 20, 1986, would be the date exactly two years before the first tangible evidence of knowledge of this suit by Doctors Longmire and Weatherall. That date is only nine days after the death of Helen Womble. Certainly, it is reasonable to expect that it would have taken Ms. Womble's family at least nine days through reasonably diligent inquiry to acquire knowledge of a basis for suit against Longmire and Weatherall.
On these facts the conclusion that, within the statutory period provided by law for commencing this action, Longmire and Weatherall had notice of this suit and knew or should have known that but for a mistake concerning their identities, they would have been included in this suit when it was originally filed on March 28, 1988, is virtually compelled. It is also obvious beyond peradventure that they will not be prejudiced in maintaining a defense on the merits. The record shows that they were already preparing with retained counsel to defend themselves in this action on April 21, 1988. That date is only approximately three weeks after the original complaint was filed. Therefore, we find that the provisions of Rule 15(c) have been satisfied by the facts of this case, and, consequently, we rule that summary judgment was improperly entered for Doctor Weatherall and Dr. Longmire on the basis of time bar. That judgment is reversed.
There is at least an issue of fact whether Emergency Room Group, Ltd. should be deemed to have notice through the knowledge acquired by Doctors Longmire and Weatherall. It has long been the rule that "a corporation is bound by the knowledge acquired by, or notice given to, its officers or agents which is within the actual or apparent scope of their authority or employment and which is in reference to a matter to which their authority extends." Parmes v. Illinois Central Gulf Railroad, 440 So.2d 261, 265 (Miss. 1983). The 1989 Annual Report for Emergency Room Group, Ltd. lists Dr. J. Spurgeon Weatherall as the corporation's vice-president and Dr. A.W. Longmire as the corporation's treasurer. It also identifies Dr. Weatherall as the registered agent for the corporation. The record is not entirely clear on the precise period in time that the Annual Report pertains to. Therefore, we cannot assume that Doctors Longmire and Weatherall were officers of the corporation at the time they personally acquired knowledge of the suit. However, the information contained in the 1989 Annual Report clearly creates a real question regarding the corporate roles that were being played by Longmire and Weatherall at the time they acquired notice. Accordingly, we reverse the entry of summary judgment for Emergency Room Group, Ltd.
The record does not give any indication that Dr. Calhoun possessed an awareness that, but for a mistake, he would have been included in this suit when it was originally filed. Therefore, Rule 15(c) does not provide a basis for disturbing the summary judgment that was entered for him on time bar. That judgment is affirmed. Appellants also challenge the Rule 12(b)(6) dismissal that was entered by the trial court for Dr. Calhoun. Because we have affirmed the entry of summary judgment in Dr. Calhoun's favor, it is not necessary to address the propriety of the dismissal.

Conclusion
For the reasons set forth above, we affirm the entries of summary judgment for Singing River Hospital, the Singing River Hospital Board of Trustees, the members of the Singing River Hospital Board of *1269 Trustees, and Dr. Wallace Calhoun. We reverse the entries of summary judgment for Dr. Spurgeon Weatherall, Dr. Atkinson Winans Longmire, and Emergency Room Group, Ltd. The actions with respect to those parties are hereby remanded to the Jackson County Circuit County for further proceedings consistent with this decision.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, ROBERTS and SMITH, JJ., concur.
DAN M. LEE, P.J., concurs in result only.
McRAE, J., not participating.

ON PETITION FOR REHEARING
Rehearing denied June 10, 1993.
DAN M. LEE, Presiding Justice, specially concurring on denial of rehearing:
Although I concur in the result reached by the Court in this case, I feel compelled to disagree with the treatment afforded our precedents in the area of qualified immunity for public doctors. Specifically, I feel the Court oversteps the bounds of this case and ranges far afield in order to overrule the cases of Hudson v. Rausa, 462 So.2d 689 (Miss. 1984), and its progeny, Marshall v. Chawla, 520 So.2d 1374 (Miss. 1988).
In my opinion those two cases represent sound reasoning and deserve better treatment than they receive from today's majority. At any rate, the issues presented in the present case may be adequately resolved without overruling Hudson or Marshall. Both of these cases stand for the proposition that public doctors enjoy qualified immunity for treatment decisions. The justifications for such a rule are manifold and are convincingly presented by the authors of those opinions. I am firmly convinced that neither Longmire nor Weatherall are "public doctors" as contemplated in Hudson and Marshall. These doctors do not work directly for an institution that enjoys immunity. Rather, they are employees of the Emergency Room Group, Ltd., a private corporation that provides health care to Singing River on a contract basis. This factual distinction is telling when viewed in light of the reasoning behind the rule in Hudson and Marshall.
For the foregoing reason, I would distinguish Hudson and Marshall from the current case and retain them as sound precedent for cases truly involving "public doctors." To do otherwise not only introduces unnecessary instability into the legal process but also reflects poorly on this Court's commitment to its precedents as well as its fulfillment of the duty to decide only the issues properly presented by the case on appeal.
ROBERTS, James L., Jr., J., joins this opinion.