**Malikah GLOVER, By and Through Her Parents and Next of Kin, Gregrick GLOVER and Sandra Glover, Plaintiff**

v.

**L.V. DONNELL and the National Youth Sports Program Fund (incorrectly named in the complaint as the National Collegiate Athletic Association), Defendants.**

Civ. A. No. 3:94cv346(L)(N).

United States District Court,
S.D. Mississippi,
Jackson Division.

March 2, 1995.

Barry Wayne Howard and Chokwe Lumumba, Jackson, MS, for plaintiff.

Thomas C. Gerity, Copeland, Cook, Taylor, & Bush, Jackson, MS, for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on plaintiff Malikah Glover's motion to remand and on defendant L.V. Donnell's motion to dismiss or, in the alternative, for summary judgment. Defendant The National Youth Sports Program Fund (NYSPF), a Missouri corporation with its principal place of business in Kansas, has responded in opposition to plaintiff's motion to remand, and plaintiff has responded to Donnell's motion to dismiss. The court, having considered the memoranda of authorities and exhibits presented by the parties, concludes that Donnell's motion to dismiss should be granted, and plaintiff's motion to remand should accordingly be denied.

The fundamental issue upon which these motions are based is whether or not Donnell, a Mississippi resident, was fraudulently joined for the purpose of defeating diversity jurisdiction. If Donnell is dismissed, that is, if the court determines that plaintiff has no possibility of recovery against him, diversity of citizenship will be satisfied, and the cause may properly remain in this court. *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir.1981).[1]

The facts giving rise to this action occurred in June 1993, when the minor plaintiff, Malikah Glover, while participating in a federally funded summer program held on the campus of Jackson State University (JSU), was raped by two of the male participants in the program. She filed the present action against L.V. Donnell, Activity Director for the program, charging that the rape and her resulting injuries proximately resulted from his negligence in failing to exercise reasonable care to protect her and other program participants from these two boys, whose "propensity for engaging in tortious conduct" was allegedly known to Donnell.[2] More specifically, she alleges that Donnell, as a "person-in-charge" of the JSU building where the rape occurred, breached his duty to maintain the premises in a reasonably safe condition for the plaintiff, an invitee; and she charges that Donnell, irrespective of his right of control over the premises, owed her, as a participant in the program, an independent duty to protect her from the two boys in question because he knew of their proclivity for violence.[3] According to plaintiff, he should have either expelled the boys from the program, or at least warned her and the other program participants of the danger they posed.

Where a defendant alleges fraudulent joinder, the question for the court to determine is whether there exists "any possibility" that the plaintiff may establish a right to recover against the allegedly fraudulently joined defendant, *see B., Inc. v. Miller Brewing Co.*, 663 F.2d at 549, and in deciding that issue, the court may consider not only the allegations of plaintiff's complaint, but additional evidentiary materials submitted by the parties. In fact, the processes to be utilized by the court in determining a fraudulent joinder issue have been described as "summary judgment-like." *See Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir.), *cert. denied*, 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990) ("While we have frequently cautioned the district courts against pre-trying a case to determine removal jurisdiction, we have also endorsed a summary judgment-like procedure for disposing of fraudulent joinder claims.").[4] Here, having consid-

---

1. Plaintiff asserts only state law claims based in tort; there is no allegation of any constitutional violation based on 42 U.S.C. § 1983. Consequently, the only potential basis for this court's jurisdiction is diversity of citizenship.

2. Defendant NYSPF acts as a conduit for federal funds to flow to certain sub-grantees in order to fund such programs as that held on JSU's campus. JSU received some of these monies through NYSPF and hired approximately 50 employees for the program, including Donnell, who served as Activity Director for the program.

3. Defendants claim that Malikah Glover was not a properly enrolled participant in the program and that Donnell therefore had no duties toward her. For the reasons set forth herein, the court finds that distinction to be immaterial to the resolution of the present motions.

4. Though the Fifth Circuit has repeatedly held that the standards of review on a motion to remand and a motion for summary judgment are quite similar, plaintiff argues in her rebuttal brief that "[a] good approach for this Court to take is to remand the case to the Circuit Court of the

ered the parties' evidence in light of plaintiff's allegations against Donnell and the applicable law, the court is of the opinion that even if plaintiff could show Donnell was negligent in the performance of his duties relative to the program and its participants, she still could not proceed, much less recover, against Donnell if he is sheltered by qualified public official immunity under Mississippi law.

■ Thus, the only question for the court on the present motion is whether Donnell, an employee of JSU at the time of the incident underlying this lawsuit, is entitled to qualified public official immunity. It has long been the law that public officials in Mississippi enjoy a qualified immunity for discretionary acts which they perform in their official capacities; for merely ministerial acts, however, they have no immunity. *See Davis v. Little,* 362 So.2d 642, 643 (Miss. 1978). In more recent years, the Mississippi Supreme Court appears to have engrafted an additional requirement for such immunity by suggesting that an official's acts must also be in furtherance of public policy, or at least in the public interest. That is, the court has indicated that where the defendant's acts are not related to the development or implementation of public policy or the furtherance of the public welfare, then qualified immunity does not apply. *Womble v. Singing River Hospital,* 618 So.2d 1252, 1263 (Miss.1993).[5] In the circumstances of this case, the court is convinced both that the program headed by Donnell served a public interest and that his decisions relative to this program were discretionary acts for which he is entitled to immunity.

The purpose of the NYSP program held at JSU was to benefit inner-city children through the provision of structured activities during the summer. The program provided the children with opportunities for supervised athletic activity, as well as health and anti-drug information. Donnell, as the Activity Director, was the person directly responsible for the day-to-day implementation of these program goals. The court does not hesitate to conclude that Donnell, in his capacity as Activity Director of this summer program for economically disadvantaged urban youths held on the campus of a state university pursuant to a grant of federal funds, was furthering the public interest. That is, his acts were for the public good and furthered public policy.

All of the acts and omissions of which plaintiff complains were performed by Donnell in his role as Activity Director of the summer program.[6] The specific acts and

---

First Judicial District of Hinds County, Mississippi, for determination by summary judgement or by [sic] otherwise, whether joinder was fraudulent." This is a novel suggestion and not the process that is followed in deciding remand issues.

5. Until recently, medical practitioners employed by public institutions were held to have qualified immunity for acts undertaken in the provision of medical care. These acts were considered to fall within the rubric of discretionary, as opposed to ministerial, acts set out in *Poyner v. Gilmore,* 171 Miss. 859, 158 So. 922, 923 (1935). In *Womble v. Singing River Hospital,* 618 So.2d 1252 (Miss. 1993), however, the Mississippi Supreme Court opined that the acts of the doctors being sued there, emergency room physicians employed by a state hospital, were not protected discretionary acts of public officials because the provision of individual medical treatment did not further public policy; rather, these doctors were viewed as merely performing the same types of acts as would subject a private physician to liability. It is clear from the post-*Womble* decisions of the Mississippi court that health care providers offering individual medical treatment are no longer entitled to qualified immunity for their acts. *See Gilbert v. Hall,* 620 So.2d 533 (Miss.1993); *Sullivan v. Sumrall,* 618 So.2d 1274 (Miss.1993). However, other than the court's emphasis in these cases on the requirement that the challenged conduct further public policy in order for immunity to apply, these cases do not appear to affect the scope of public official immunity outside the specific medical context in which they were decided.

6. In fact, plaintiff says in her brief that "Donnell was sued, [sic] because he was the person in charge of the 1993 JSU/NYSP program." If this were a correct characterization of the basis of her claim, then Donnell would clearly enjoy immunity, for the law in Mississippi remains that public officials who are sued merely because they exercise authority over a particular governmental program or institution are entitled to qualified immunity. *Region VII, Mental Health–Mental Retardation Center v. Isaac,* 523 So.2d 1013, 1017 (Miss.1988); *see also Sorey v. Kellett,* 849 F.2d 960 (5th Cir.1988) (University of Southern Mississippi head football coach sued because of his oversight of the university's football program

omissions placed in issue by her complaint are his alleged failure to properly supervise the youths participating in the program, his alleged failure to expel the two boys who raped the plaintiff prior to the occurrence of the rape and his alleged failure to warn the plaintiff and the other participants of the boys' propensity for violence.[7] These acts are properly characterized as discretionary, as opposed to ministerial. In *Poyner v. Gilmore*, 171 Miss. 859, 158 So. 922, 923 (1935), the Mississippi Supreme Court defined ministerial acts as those "positively imposed by law [with] performance required at a time and in a manner or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion." All acts by public officials not falling within this definition are considered discretionary and are protected by qualified immunity. The state court has further repeatedly recognized that the purpose for qualified public official immunity is to encourage and safeguard a public official's ability to exercise his or her discretion in the formulation of public policy. *See Womble*, 618 So.2d at 1263; *State ex rel. Brazeale v. Lewis*, 498 So.2d 321, 322 (Miss.1986); *Pruett v. City of Rosedale*, 421 So.2d 1046, 1052 (Miss.1982).

Plaintiff, in her briefs on this motion, has mischaracterized the distinction between the ministerial and the discretionary acts of a public official, reasoning faultily that Donnell's acts became ministerial because "[t]he

common law in the State of Mississippi positively imposes a duty upon all owners, occupants or persons in charge of premises to provide for the safety and security of all invitees ... if the risk of harm is foreseeable." According to plaintiff, because Donnell should have reasonably foreseen the boys' tortious conduct, Donnell had *"no discretion* in how this duty is to be discharged." To the contrary, it is precisely this type of official act, one in which the official's judgment is implicated, which the qualified immunity for discretionary acts is meant to protect. "The reasonable man standard of tort law is not an appropriate measure for the political, social or economic desirability of government programs and the methods selected for pursuing them." *Pruett v. City of Rosedale*, 421 So.2d 1046, 1052 (Miss.1982). Nothing that plaintiff has alleged Donnell failed to do was of a ministerial nature; rather, he was exercising his discretion in selecting what he deemed to be prudent and beneficial means for pursuing the goals of the summer program. *Cf. T.M. as Next Friend of E.N.M. v. Noblitt*, 650 So.2d 1340, 1342 (Miss.1995) ("The duty to hire and supervise employees is necessarily and logically dependent upon judgment and discretion.")

If the question for the court were simply whether there were disputed issues of material fact concerning plaintiff's charges of negligence by Donnell, the court might well find that disputed issues do indeed exist.[8] The

---

held entitled to qualified immunity). However, inasmuch as plaintiff's complaint charges specific allegations of negligence by Donnell, the court believes the proper inquiry is whether he is entitled to immunity for those acts or omissions, and not simply whether he is entitled to immunity based on his position in relation to this program.

7. There is no allegation, of course, that Donnell directly participated in the criminal act. Rather, any liability incurred by Donnell would be through his failure to act to prevent the crime.

8. That is not to say that the court would necessarily find summary judgment inappropriate on the facts presented thus far. Defendants strongly contest plaintiff's premises liability claim against Donnell, arguing that Donnell had no right of control over JSU's property. They further dispute plaintiff's contention that Donnell should reasonably have foreseen the rape. *See Crain v.*

*Cleveland Lodge*, 641 So.2d 1186 (Miss.1994) (premises liability may be founded upon duty by occupant to protect third parties from criminal acts of others only where those criminal acts are reasonably foreseeable). Liability under plaintiff's more general charge of negligence can also be premised only upon a finding that the boys' act was reasonably foreseeable to Donnell. In this case, while there is evidence that one of plaintiff's assailants, Christopher Chase, had been involved in eight or nine fights over the course of several summers in the program and in two fights in the summer of 1993, and that he had previously been disciplined by Coach Donnell, there is no evidence that either Chase, or plaintiff's other attacker, had any criminal record or had committed any other criminal acts against any of the program. Further, with respect to the fights in which Chase was involved, there is no indication of whether Chase provoked

question, though, is whether Donnell is entitled to qualified immunity for his acts, whether negligent or not. Given that the court has concluded that the program was one in the public interest and that Donnell's acts were discretionary, it matters not whether Donnell could have been more careful or whether he could have exercised greater control over the program participants. He still is entitled to immunity.

In conclusion, the court finds that as a matter of law, Donnell, acting in his capacity as Activity Director of the summer youth program, is entitled to qualified public official immunity. The court therefore concludes that there is no possibility that plaintiff may recover against Donnell.[9]

For the foregoing reasons, it is ordered that Donnell's motion to dismiss is granted and that plaintiff's motion to remand is accordingly denied.

these fights, or whether any criminal charges were filed.

**9.** Plaintiff also argues that the purchase of insurance by the program amounts to a waiver of public official immunity. This argument is without merit, as any such waiver would apply only in a sovereign immunity context and would have no applicability to the doctrine of public official immunity.