# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-01246-SCT

*NHUT VAN NGUYEN, AS NATURAL FATHER AND EXECUTOR OF THE ESTATE OF PHUNG THI KIM NGUYEN, CHAU HUYNH, HEIU NGUYEN, JOHN NGUYEN, THRANG NGUYEN AND TRAN NGUYEN*

*v.*

*MISSISSIPPI VALLEY GAS COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 6/22/2000 |
| TRIAL JUDGE: | HON. L. BRELAND HILBURN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WAYNE E. FERRELL, JR. |
| | ANDRE FRANCIS DUCOTE |
| ATTORNEYS FOR APPELLEE: | KAY FREEMAN DODGE |
| | ALAN W. PERRY |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 05/02/2002 |
| MOTION FOR REHEARING FILED: | 5/16/2002 |
| MANDATE ISSUED: | |

**BEFORE McRAE, P.J., WALLER AND GRAVES, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1. This matter is an appeal by Nhut Van Nguyen, as natural father and executor of the estate of Phung Thi Kim Nguyen, Chau Huynh, Heiu Nguyen, John Nguyen, Thrang Nguyen and Tran Nguyen, ( "Nguyen") from an order of the Circuit Court of the First Judicial District of Hinds County, denying Nguyen's motion for reconsideration and upholding its prior order granting Mississippi Valley Gas Company's motion to dismiss or, in the alternative, for summary judgment Nguyen raises one issue:

**WHETHER THE TRIAL COURT ERRED BY FAILING TO APPLY THE RELATION BACK PROVISION OF M.R.C.P. 15(c).**

## FACTS

¶2. On September 21, 1995, Phung Thi Kim Nguyen ("Kim") was visiting defendant, Van Cuong ("Cuong"), at Fantasy Nails nail salon located at 1015 Ellis Avenue, Jackson, Mississippi. An explosion and fire erupted at approximately 2:30 p.m. while Kim was in the rear storage area of the salon and Cuong was outside the building. Cuong attempted to rescue Kim from the fire, but was unable to do so due to the extreme heat emitted by the explosion and fire.

¶3. Kim was pronounced dead from carbon monoxide poisoning and extreme heat due to what Nguyen alleges was a vapor flash fire caused by the ignition of acetone which was left in open containers. Nguyen alleges that the gas operated water heater ignited the fumes of acetone.

¶4. The original complaint in this action was filed on September 20, 1996, approximately one year after the explosion and fire that resulted in Kim's death. Paragraph 12 of the original complaint named as fictitious parties, defendants A through M, and identified those parties as follows:

> governments; sub-agencies of governments; individuals; partnerships; corporations; sellers; retailers; wholesalers; repairers; servicers; manufacturers; or entities (who are unidentified at this time) and may have been negligent, may have caused and/or may be responsible for the accident in question and Plaintiffs' decedent's death. Plaintiffs intends (sic) to amend this Complaint and name and serve Defendants A through M once they are identified and once their liability is ascertained.

¶5. On or about September 10, 1998, a motion for leave of court to file an amended complaint was filed. On or about October 2, 1998, an agreed order for leave of court to file an amended complaint was entered. The amended complaint, however, was not filed until on or about May 18, 1999.

¶6. The amended complaint named Noram Energy Corp., f/k/a Entex, Inc. ("Noram") as a defendant. The amended complaint alleged that Noram, as the supplier of natural gas to Fantasy Nails, negligently caused, permitted, or allowed natural gas to ignite and/or explode, and Noram's negligence was a contributing proximate cause of Kim's death. The amended complaint asserted claims against fictitious parties, defendants H through M, and defined those parties as they were defined in the original complaint.

¶7. A third[1] amended complaint was filed on or about May 28, 1999.[2] The third amended complaint again named Noram as the supplier of natural gas service to Fantasy Nails. The third amended complaint continued to assert allegations against fictitious parties, defendants H through M, and defined those parties exactly as in the previous complaint.

¶8. Approximately two months later, a joint motion for order of dismissal without prejudice, dismissing Noram as a defendant, was filed on or about July 21, 1999.[3] The order dismissing Noram was not entered until on or about February 25, 2000. In the meantime, a motion for leave to file a fourth amended complaint was filed. The trial court granted that motion and on or about September 15, 1999, the fourth amended complaint, which, for the first time, named Mississippi Valley Gas Company ("MVG") as a defendant, was filed. The fourth amended complaint also continued to assert claims against fictitious parties, defendants H through M, as they were defined in the previous complaints.

¶9. In a sworn affidavit dated October 14, 1999, Richard W. Wise, agent for service of process for MVG, stated

> MVG had no knowledge of the claim filed by [Nguyen] until approximately July 1999, when I received a phone call from an attorney for [Noram].

[Noram's] attorney informed me during that telephone call that [Noram] was preparing to file a motion to dismiss based on the fact that it was not the supplier of natural gas to the location at issue and wanted to give MVG a 'heads up' that it may be sued.

¶10. On October 15, 1999, MVG filed a motion to dismiss or, in the alternative, for summary judgment. In that motion, MVG sought dismissal with prejudice from the litigation because MVG was not provided notice of the litigation within the three-year statute of limitations. The trial court granted MVG's motion to dismiss on May 8, 2000.[(4)] Nguyen filed a motion for reconsideration, but the trial court denied that motion. It is from that decision that Nguyen now appeals.

## PARTIES' CONTENTIONS

¶11. Nguyen argues that the claims asserted against MVG are not barred by the statute of limitations because the relation back provision of M.R.C.P 15(c) applies in this case. Nguyen states that the trial court granted MVG's motion to dismiss or in the alternative, for summary judgment based upon the statute of limitations for this action, which expired on September 21, 1998. However, Nguyen argues that the trial court erred when it failed to apply the relation back provisions of M.R.C.P. 15(c), which allows for the bringing of a claim outside the statute of limitations.

¶12. Rule 15 states:

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by Rule 4(h) for the service of the summons and complaint, the party to be brought in by amendment:

(1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and

(2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him. An amendment pursuant to Rule 9(h) is not an amendment changing the party against whom a claim is asserted and such amendment relates back to the date of the original pleading.

M.R.C.P. 15(c). Nguyen further references the comment to M.R.C.P. 15(c) which states that

An intended defendant who is notified of an action within the period allowed by Rule 4(h) for service of a summons and complaint may not defeat the action on account of a defect in the pleading with respect to the defendant's name, provided that the requirements of clauses (1) and (2) have been met. If the notice requirement is met within the Rule 4(h) period, a complaint may be amended at any time to correct a formal defect such as a misnomer or misidentification.

M.R.C.P. 15 cmt.

¶13. Through discovery, Nguyen was informed that Noram supplied natural gas to the Fantasy Nails

location. Nguyen states that the third amended complaint was filed on May 18, 1999,[(5)] substituting Noram for one of the fictitious defendants listed in the original complaint pursuant to M.R.C.P. 9(h). Shortly after filing and serving the third amended complaint, Nguyen claims Noram advised that it did not provide natural gas service to the premises occupied by Fantasy Nails. As a result, Nguyen dismissed Noram and filed a fourth amended complaint to correct "the misnomer." The fourth amended complaint was filed on September 15, 1999. *Id.*

¶14. Nguyen states that where a party is mistakenly named, an amendment will relate back if within the time period for service under M.R.C.P. 4(h) if the correct party knew of the existence of the action and knew or should have known, but for the mistake, that the action would have been brought against it. In support, Nguyen states, "merely seventy-two (72) days passed" between the filing of the third amended complaint and the end of July, when the fourth amended complaint was filed and served."[(6)] Nguyen claims that MVG "confessed knowledge" of the cause of action within the statutory time period when "MVG's representative testified through affidavit that it was advised by Noram's counsel of the cause of action in July of 1999." Therefore, Nguyen contends that MVG had knowledge of the litigation within the time frame for service of the summons and complaint for the relation back privilege of M.R.C.P. 15(c) to apply.

¶15. Nguyen posits that the claims alleged against MVG arose from the same transaction which was the basis of the third amended complaint. Additionally, Nguyen states that there was no impending trial date when the trial court ruled on the motion to dismiss and there was no evidence that MVG would suffer any prejudice in maintaining its defense. Finally, Nguyen argues that MVG had knowledge of the claim within 120 days of the filing of the Third Amended Complaint and knew, or should have known, that but for the misnomer of parties that it would have been named as a defendant in this action. Accordingly, Nguyen claims that it should have been allowed to proceed against MVG.

¶16. MVG maintains that the applicable three-year statute of limitations expired on September 21, 1998, almost a year before the fourth amended complaint, which, for the first time named MVG as a defendant, was filed. MVG agrees that M.R.C.P. 15(c) governs this situation, but argues that the "prescribed limitations period" under Rule 15(c) includes only the three year statute of limitations plus 120 days for service of the summons and complaint under Rule 4(h).

¶17. MVG refers to ***Brown v. Winn-Dixie Montgomery, Inc.,*** 669 So.2d 92 (Miss. 1996), stating that the 120 day period provided for under Rule 15(c) attaches to the end of the statute of limitations period. . MVG argues that according to the decision in ***Brown***, "the 120-day time period is added to the end of the limitations period and not arbitrarily to any other filing date, as asserted by [Nguyen] in the instant litigation. As a result, MVG argues that "since [Nguyen] did not file their claim against MVG or any other gas supplier within 120 days of the running of the statute, the relation back language of Rule 15(c) has no bearing."

¶18. MVG further asserts that the contact in July, 1999, between Noram's counsel and MVG's counsel was "well outside the 'prescribed limitations period' of three years and 120 days. . . ." "[B]ecause MVG had no notice of the institution of the suit until July 1999, MVG had no way of knowing that, because of the mistaken identity, [Noram] had been identified as the responsible party." Thus, MVG argues that Nguyen cannot meet the requirements of M.R.C.P. 15(c), and the claims against MVG were not timely filed and were properly dismissed by the trial court.

¶19. MVG also argues that the fourth amended complaint did not comply with the requirements of Rule 9(h) in order to relate back to the date of the original complaint. MVG states that the fourth amended

complaint merely replaced the claims against Noram with identical claims against MVG. Also, the fictitious parties sued in the third amended complaint are again sued and defined identically in the fourth amended complaint.

¶20. MVG makes an additional argument that Nguyen was not reasonably diligent in amending the complaint in order for the amendment to relate back to the date of the original complaint. MVG states that there were a number of ways for Nguyen to determine the supplier of natural gas to the Fantasy Nails nail salon location. MVG suggests that Nguyen could have contacted other natural gas customers in the area, the Public Service Commission, the City of Jackson, or could have simply asked the owner of the property. Yet, it was almost four years after the fire and explosion before Nguyen sued the correct entity that provided natural gas service to the Fantasy Nails nail salon. MVG argues that Nguyen's lack of diligence is a separate basis for determining that the amendment was not an amendment to substitute a fictitious party under Rule 9(h).

¶21. Finally, MVG argues that Nguyen did not comply with the policy of Rule 9(h) in order for any amendment to relate back to the date of the original complaint because Nguyen did not assert a proper claim against fictitious parties in its original complaint or any amendment thereto.

¶22. In response, Nguyen argues that MVG's argument lacks merit. First, because it is based on ***Brown v. Winn-Dixie, Montgomery, Inc.,*** 669 So.2d 92 (Miss. 1996), which, Nguyen claims, follows abandoned federal law. Second, Nguyen states that nothing in the Rule or the comments specify that the intent of the amendment to MRCP 15 was to extend the statute of limitations 120 days as to misnamed or misidentified defendants. Nguyen argues that a defendant must simply be named in a complaint prior to there being any revelation of a misnomer or misidentification. Nguyen further argues that pursuant to ***Estes v. Starnes***, 732 So.2d 251, 252 (Miss. 1999). MVG's interpretation of Rule 15(c) defeats the liberal pleadings practice set forth in the rules and upheld by this Court.

¶23. Nguyen also urges this Court to find that MVG's assertion that Nguyen did not conduct a reasonably diligent inquiry as to the supplier of natural gas erroneous. Nguyen states that it is clearly indicated in the record that Nguyen's counsel retained a forensic engineering firm to investigate the subject incident. As a result of that firm's investigation, Nguyen was advised that Noram provided natural gas service to Fantasy Nails. Thereafter, Nguyen amended their complaint to assert claims against Noram and once was it was discovered that Noram was not the provider of natural gas service to the Fantasy Nails location, Nguyen dismissed Noram and amended the complaint to correct the misidentification.

## DISCUSSION

¶24. This Court reviews questions of law, which include summary judgments and motions to dismiss, de novo. ***City of Jackson v. Perry***, 764 So.2d 373, 375 (Miss. 2000) (citing ***Cooper v. Crabb***, 587 So.2d 236, 239 (Miss. 1991)). The decision to grant or deny a motion to dismiss is in the discretion of the trial court and will not be reversed unless that discretion is abused. ***Roebuck v. City of Aberdeen***, 671 So.2d 49, 51 (Miss. 1996).

¶25. Amendment of complaints is governed by Rule 15 of the Mississippi Rules of Civil Procedure. M.R.C.P. 15(c) was amended July 1, 1998, to state that the relation back period includes the time permitted for service of process under Rule 4(h). M.R.C.P. 15(c) has been construed as allowing the relation back of additional parties *where the newly named party was aware of the proceedings during*

*the statutory time limit for bringing suit*, knew or should have known that but for a mistake in identity he would have been named, and would not be prejudiced in his defense of his case. ***Estes v. Starnes***, 732 So.2d 251 (Miss. 1999) (emphasis added).

¶26. In the case sub judice, the original complaint named fictitious parties, defendants A through M and specifically stated that Nguyen "intends to amend this complaint and name and serve Defendants A through M once they are identified and once their liability is ascertained." The record contains an affidavit filed by Nguyen's attorney which states in pertinent part,

> In my capacity as attorney for the Plaintiffs, I hired the firm of McDowell/Owens Engineering of Houston, Texas, as a liability expert witness is (sic) this case. Part of McDowell/Owens' investigation was to discover the providers of utility services to the business known as Fantasy Nails which was located in Jackson, Mississippi. As a result of that firm's investigation, I was advised that Noram Energy Corporation, formerly known as Entex, Inc., was the supplier of natural gas to the Fantasy Nails business. Based upon that information, I filed an amended complaint on behalf of the Plaintiffs on May 19, 1999, substituting Noram Energy Corporation for a fictitious Defendant. Shortly thereafter, I was contacted by Mr. Kaufman, Noram's attorney, who advised me that Noram was not the supplier of natural gas to Fantasy Nails business. Further, Mr. Kaufman advised me that Mississippi Valley Gas was in fact the supplier of natural gas to Fantasy Nails. On July 21, 1999, I dismissed Noram as a Defendant in this case and, upon the informatin that I was provided, filed a Fourth Amended Complaint against Mississippi Valley Gas on September 15, 1999.

> The information that Noram was the correct Defendant was provided by a reliable source and it is my opinion that it was justified in relying on that information.

¶27. Accordingly, an amended complaint was filed substituting Noram for one of the fictitious defendants listed in the original complaint. The amended complaint also reduced the number of fictitious defendants from A through M to fictitious defendants H through M. Thus, M.R.C.P 9(h), which governs fictitious parties, comes into play.

¶28. The purpose of Rule 9(h) specifically, is to toll the statute of limitations when, in good faith, the plaintiff is unable to identify unknown defendants. Rule 9(h) states,

> When a party is ignorant of the name of an opposing party and so alleges in his pleading, the opposing party may be designated by any name, and when his true name is discovered the process and all pleadings and proceedings in the action may be amended by substituting the true name and giving proper notice to the opposing party.

M.R.C.P. 9(h).

¶29. After discovering Noram was not the correct party, Nguyen replaced Noram with MVG in the fourth amended complaint. The fourth amended complaint also continued to name fictitious defendants H through M and defined those parties as in the previous complaint. Thus, it appears that Nguyen did not "substitute" a party in accordance with Rule 9(h), but merely "chang[ed] the party against whom a claim [was] asserted" pursuant to Rule 15(c). By replacing all references to Noram with MVG, Nguyen did not satisfy the requirement of M.R.C.P. 9(h). Once it is determined that the provisions of 9(h) have not been satisfied, any amendment made to add additional parties must satisfy the provisions of Rule 15(c) regarding "changing the

party against whom a claim is asserted" to prevent time bar by the statute of limitations. ***Womble v. Singing River Hosp.,*** 618 So.2d 1252, 1267 (Miss. 1993). As such, the amendment is governed by Rule 15(c).

¶30. In ***Womble***, the heirs of Helen Womble filed a wrongful death action against Singing River Hospital, the hospital's board of trustees, Dr. Clyde Gunn and the hospital's emergency room physicians and nurses (John Does 1-5). The complaint alleged the John Doe defendants to be unknown at that time. Upon discovering the names of the emergency room physicians some two years and eight months after the death of Helen Womble, an amended complaint was filed substituting those physicians for the John Doe defendants. The trial court granted summary judgment to the emergency room physicians on the ground of time bar. Ms. Womble's heirs appealed the grant of summary judgement made by the trial judge. This Court, however, refused to apply Rule 9(h) and allow the amendment to relate back stating:

> there were numerous medical records on file at [the Hospital] indicating the extent to which [the emergency room doctors] had participated in the treatment of Helen Womble. A reasonably diligent inquiry by the appellants into the history of the deceased's medical treatment would have revealed to appellants the identities of the persons they sought to identify categorically as "Emergency Room Physicians and Nurses (John Does 1-5." Therefore, we hold that appellants were not ignorant of the identities of appellees in the sense contemplated by Rule 9(h). Consequently, no relief is provided appellants from the running of the statutory period by Rule 9(h).

***Womble***, 618 So.2d at 1267. After determining that the requirements of Rule 9(h) were not satisfied, ***Womble*** examined the amended complaint to determine if the provisions of Rule 15(c) were satisfied. The Court found that the provisions of Rule 15(c) were satisfied based on the fact that the emergency room physicians had notice of the suit and knew or should have known that but for a mistake concerning their identities, they would have been included in this suit when it was originally filed. ***Id.*** at 1268. The Court also stated that the defendants were not prejudiced in maintaining a defense on merits since the record showed they were already preparing with retained counsel to defend themselves approximately three weeks after the original complaint was filed. ***Id.***

¶31. In examining whether the requirements of Rule 15(c) were satisfied in the present case, one first finds that the amended complaint did, in fact, arise out of the conduct, transaction, or occurrence, namely the fire and explosion at Fantasy Nails, as set forth in the original complaint. Specifically, the amended complaint named Noram as the natural gas supplier to Fantasy Nails and alleged that Noram negligently caused, permitted, or allowed natural gas to ignite and/or explode, and Noram's negligence was a contributing proximate cause of Kim's death. MVG does not contest that the claims asserted against it in the fourth amended complaint arose out of the same occurrence as pled in the original complaint.

¶32. Second, one must determine whether the party received such notice that he would not be prejudiced in maintaining his defense on the merits. Because the amended complaint changed a party against whom a claim was asserted in the original complaint, one must also determine if the amendment occurred within the time period provided by Rule 4(h) for service of the summons and complaint. Rule 4(h) states,

> If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

M.R.C.P. 4(h). The applicable three year statute of limitations period in this action would have expired on September 21, 1998. MVG was not named as a defendant until September 15, 1999. As such the case at bar is distinguishable from *Womble* in that MVG had not retained counsel nor discussed the possibility of litigation within the statutory time period. In fact, it was almost four years from the date of the fire and explosion before MVG was named as a defendant. Even the "heads up" notice from Noram's counsel in July 1999 would have been outside the prescribed three year statutory time period.

¶33. Although it can be argued that MVG knew about the explosion and fire, the fact is no claims were asserted against any natural gas provider within the statutory time period. Therefore, it cannot be said that MVG "knew or should have known" that Noram was incorrectly identified as the natural gas provider.

¶34. Additionally, the relation back privilege provided for fictitious parties under Rule 15(c)(2) requires the plaintiff to actually exercise a reasonably diligent inquiry into the identity of the fictitious party. *[Doe v. Mississippi Blood Servs., Inc.](#)*, 704 So.2d 1016, 1019 (Miss. 1997). This Court will make a strict inquiry as to whether the plaintiff exercised reasonable diligence in ascertaining the fictitious party's real identity. *Doe,* 704 So.2d at 1019*.* This due diligence must occur prior to the running of the statute of limitations and must entail the actual exercise of due diligence rather than a mere finding that the party could have found the defendant's identity if it had exercised due diligence. *Id.*

¶35. In *Doe*, the daughter of a woman who died of AIDS brought a wrongful death action against, among others, United Blood Services (UBS), a blood bank, and fifty (50) unidentified defendants. Doe's decedent had received tainted blood in a transfusion during an operation at Forrest General Hospital in 1983, was diagnosed with AIDS in 1987 and died as a result thereof on January 1, 1991. Doe filed a wrongful death action on December 30, 1993, and all parties agreed that the applicable statute of limitations would have run on January 1, 1994.

¶36. Doe's counsel identified UBS as having supplied blood to Forrest General at the relevant time pursuant to a telephone conversation with the hospital on December 27, 1993. An employee of Doe's counsel telephoned the hospital and was told "by a person answering the phone" that she was not certain that UBS had provided blood to the hospital in 1982 and 1983, but that it had been providing blood and blood products to the hospital for many years. Doe's counsel did not request medical records from the hospital until December 28, 1993 and cancelled that request on January 4, 1994.

¶37. On February 2, 1994, UBS removed the case to federal court and moved to dismiss the litigation on the basis that it did not supply blood to Forrest General during the relevant time period. Thereafter, on July 8, 1994, Doe moved to dismiss UBS and join Mississippi Blood Services (MBS). Doe, thereafter, on July 29, 1994, amended her complaint naming MBS as the supplier of the subject blood. The federal court then remanded the action back to state court, the substitution having defeated diversity jurisdiction.

¶38. On December 2, 1994, upon motion of MBS, the Circuit Court of Hinds County dismissed MBS on the basis that Doe did not truly substitute MBS for a John Doe defendant and that Doe was not reasonably diligent in obtaining the identity of the supplier of the blood. Doe appealed MBS's dismissal.

¶39. On appeal, the Court ruled that Doe had not substituted MBS for a fictitious party, but had simply replaced all references to UBS with MBS. *Id.* at 1017-18. Thus, the Court ruled that Doe had not met the requirements of M.R.C.P. 9(h), but had merely substituted MBS for a named party. *Id.* at 1018. The

complaints filed against both UBS and MBS were identical except for the substitution of the parties' names. *Id.* (citing *Schultz v. Romanance*, 906 S.W.2d 393, 395 (Mo. Ct. App. 1995) (holding that plaintiffs purported substitution for John Doe defendants was merely an attempt to join new parties after the expiration of the statute of limitations)). Further, the Court noted that the same fictitious parties named in the original complaint were named as fictitious parties in the amended complaint which made allegations against MBS. Thus, the Court ruled that Doe had not met the requirements of Rule 9(h) in order for the amendment to relate back to the original complaint.

¶40. In addition to Doe's failure to properly substitute parties, the *Doe* Court, on appeal, ruled that the dismissal of MSB was proper due to Doe's failure to timely or diligently determine the proper parties. The Court, citing *Womble v. Singing River Hosp.*, 618 So.2d at 1266-68, stated that a "reasonable diligence" test was proper to determine the proper substitution of unknown parties. *Doe*, 704 So.2d at 1018.

¶41. Nguyen failed to file the amended complaint within the statutory time period. Additionally, although Nguyen arguably exercised due diligence in ascertaining the correct defendant, the fact remains that no claims were asserted against any natural gas provider within the statutory time period. Because neither Noram nor MVG received notice of the institution of this action within the statutory time period, the trial court did not abuse its discretion in determining that all claims against MVG were time barred.

## CONCLUSION

¶42. Based on the foregoing, the trial court correctly granted MVG's motion to dismiss and denied Nguyen's motion for reconsideration. Therefore, the judgment of the trial court is affirmed**.**

¶43**. AFFIRMED.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, COBB, DIAZ AND CARLSON, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**

1. According to the certified copies of the Circuit Clerk's docket entries, no leave was sought to file a Second Amended Complaint, nor was such ever filed.

2. A review of the record does not indicate that leave was sought to file the Third Amended Complaint, but the Circuit Clerk's docket entries do not reveal an entry of filing the Third Amended Complaint on or about May 28, 1999. The record contains a copy of the Third Amended Complaint bearing the Circuit Clerk's stamp and although, the stamped "Filed" date is illegible, the last page of the Third Amended Complaint and the Certificate of Service bears the date of May 27, 1999, leading one to believe it was, in fact, filed on or about May 28, 1999.

3. Nguyen states in its brief that, "[a]fter Noram was served with process, its counsel contacted [Nguyen's] counsel and advised that it did not supply natural gas to Fantasy Nails. Rather, Noram's counsel stated that Mississippi Valley Gas ("MVG") supplied natural gas to the Fantasy Nails business." Yet, the brief is unclear as to exactly when Nguyen's counsel was notified of this; whether it was after the Amended Complaint or Third Amended Complaint.

4. The order of dismissal with prejudice specifically states that the trial court was "preceding [sic] solely on Defendant's, Mississippi Valley Gas Company, motion to dismiss and not on summary judgment. . ."

5. This statement is incorrect. Nguyen has confused the **Amended** Complaint and the **Third** Amended Complaint. Noram <u>was </u>substituted as a party defendant in the Amended Complaint which was filed on May 18, 1999. However, the record indicates that the Third Amended Complaint was filed on May 28, 1999.

6. Again, this is an incorrect statement. As written, the statement indicates that the Fourth Amended Complaint was filed <u>and</u> served at the end of July. However, the record indicates that the Fourth Amended Complaint was not filed until September 15, 1999. The Amended Complaint was filed on or about May 18, 1999, while the Third Amended Complaint was filed on or about May 28, 1999. Thus, it would have been <u>seventy-four days</u> from the filing of the <u>Amended</u> Complaint, not the Third Amended Complaint, and <u>the end of July</u>.