# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00243-COA

**ROBERT HAMMONS, JR.**                                                      **APPELLANT**

**v.**

**C. WADE NAVARRE, II, INDIVIDUALLY AND**                        **APPELLEES**
**D/B/A NAVARRE FABRICATION, INC.,**
**NAVARRE FABRICATION, INC., VELCON**
**FILTERS, LLC, KNAPPCO CORPORATION**
**AND WILDEN PUMP AND ENGINEERING, LLC**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/31/2014 |
| TRIAL JUDGE: | HON. MARGARET CAREY-MCCRAY |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WAYNE E. FERRELL JR. |
| | ADRIENNE P. FRASCOGNA |
| ATTORNEYS FOR APPELLEES: | W. SCOTT WELCH III |
| | CHARLES G. COPELAND |
| | JAMES R. MOORE JR. |
| | MICHAEL C. GATLING |
| | TIMOTHY J. STERLING |
| | MARC A. BIGGERS |
| | RICHARD L. KIMMEL |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| TRIAL COURT DISPOSITION: | GRANTED SUMMARY JUDGMENT FOR APPELLEES |
| DISPOSITION: | AFFIRMED - 04/18/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WILSON, J., FOR THE COURT:**

¶1.     This case involves products liability claims arising out of a helicopter crash near

Eupora.  The helicopter's pilot, Robert Hammons Jr., suffered severe injuries in the crash.

Hammons initially filed suit against the manufacturer of the fuel used in the helicopter, Scott

Petroleum, alleging that the fuel was defective and contaminated when it was sold and left the control of Scott Petroleum. Hammons's original complaint also purported to name as defendants fictitious parties, "Defendants A-P." However, the complaint did not articulate any alleged wrongful conduct of these fictitious parties. Rather, the original complaint stated that the fictitious parties' "liability to [Hammons was] unknown at [that] time."

¶2. Approximately six months after the expiration of the applicable three-year statute of limitations, *see* Miss. Code Ann. § 15-1-49 (Rev. 2012), Hammons attempted to amend his complaint to substitute real defendants for the fictitious parties. Hammons alleged that these new defendants manufactured or fabricated the fuel truck used to refuel the helicopter and the fuel tank, fuel pump, and fuel filter on the truck. Hammons alleged, for the first time, that the helicopter's fuel was contaminated as a result of defects in the truck and/or its component parts. The newly added defendants moved for summary judgment, arguing that their attempted substitution did not comply with Mississippi Rule of Civil Procedure 9(h), as interpreted by our Supreme Court in *Veal v. J.P. Morgan Tr. Co. N.A.*, 955 So. 2d 843, 845-47 (¶¶8-15) (Miss. 2007). Therefore, the new defendants argued, Hammons's claims against them did not relate back to the date of his original complaint, which meant that the statute of limitations had expired as to those claims. The circuit court agreed and granted summary judgment for the defendants. We also agree and affirm.

**FACTS AND PROCEDURAL HISTORY**

¶3. On October 25, 2009, Hammons was piloting a helicopter spraying herbicides on

2

timber fields near Eupora when the helicopter's engine failed, causing it to crash. Hammons was severely injured and is now paralyzed from the waist down.

¶4. On May 26, 2011, the National Transportation Safety Board (NTSB) adopted and published its final report on the accident.[1] The NTSB found that the probable cause of the crash was a loss of engine power due to fuel contamination. The NTSB report stated:

> A postaccident examination of the helicopter's fuel system revealed a brown contaminate, of a density greater than jet fuel. . . . Examination of the dual use truck that was used to service the helicopter with fuel and herbicide revealed that the fuel filter between the Jet-A fuel tank and the fuel delivery hose was also contaminated. A common trough that ran along the top of the fuel truck provided an area where any over flow of water used to fill the truck's herbicide tank could be introduced into the truck's Jet-A fuel tank through gaps in the fuel tank's cap seal.

The "dual use truck" was owned and operated by Hammons's employer, Provine Helicopter.

The NTSB report goes on to state:

> A 500-gallon fuel tank was located a the foreword end of the truck, while a tank for mixing water and spray chemical was located at the aft end. A common trough ran along the top portion of both tanks, which would retain any over-fill of water or fuel, and was drained through two small holes at the forward end. Examination of the cap for the fuel tank revealed that the o-ring seal and the fuel vent were deteriorated, and that the seals were not continuous.

> The fuel tank was configured in a way that fuel was taken directly from the

---

[1] The dissent suggests that there is some uncertainty "as to when Hammons had access to the NTSB report." *Post* at (¶57). As discussed below, Hammons's attorney submitted an affidavit in the circuit court that states in part: "[T]he final report was not adopted until May 26, 2011 . . . . The NTSB did not release any of the information until May 26, 2011[.]" Hammons's counsel states only that the report was not *received by him* until April 6, 2012, when, as discussed below, counsel for Scott Petroleum sent him a copy. Hammons's briefs on appeal make similar statements. The record does not reveal any dispute that the report was publicly available on May 26, 2011.

lowest point in the tank, and pumped through a filter to the fuel filler hose. No standpipe was present at the bottom of the tank that would have prevented any collected water from entering the fuel filter, and no pressure gauges or sensors were installed up or downstream of the filter.

The truck-based fuel tank was checked for the presence of water using a water finding paste applied to a dip stick. A small amount of water was detected. The fuel filter between the tank and the delivery hose was removed and examined. The filter element appeared "bulged" and water was present in the filter. The brown contaminant was present throughout the paper folds of the fuel filter, and was collected along its interior.

¶5. On December 27, 2011, Hammons filed an eleven-page complaint in the circuit court. Scott Petroleum, which supplied fuel to Provine Helicopter, was the only named defendant. Hammons alleged that the fuel supplied by Scott Petroleum "was defective and unreasonably dangerous." Hammons further alleged that there was no "substantial change in [the fuel's] condition from the time the fuel left the places of manufacture and/or processing until the time of the accident." Rather, Hammons alleged, the fuel was already in a "defective condition" when it was "sold" and "left the control of Scott Petroleum." The complaint did not allege or articulate any wrongful conduct by any other entity, known or unknown.

¶6. Hammons's complaint also purported to name unknown "Defendants A-P." As to these defendants, the complaint stated, in its entirety:

Defendants, A-P, are corporations or persons whose true identities and addresses are unknown at this time and whose liability to the Plaintiff is unknown at this time. Plaintiff will amend his Complaint and include the true names and addresses of the Defendants A-P once their identities are learned and once their liabilities are ascertained.

¶7. Scott Petroleum was served on March 8, 2012. On April 6, 2012, counsel for Scott

4

Petroleum provided counsel for Hammons with a copy of the NTSB report. Counsel's cover letter stated in part:

> Based on this report, it appears that if fuel contamination existed, that fuel contamination originated in the field service truck owned by Provine Helicopter which refueled the subject helicopter several times the day of the incident. Consequently, pursuant to this correspondence, we hereby request that you dismiss this matter with prejudice as to [Scott Petroleum].
>
> Obviously, Scott Petroleum can have no liability for the failure of Provine Helicopter to maintain its service truck.

Scott Petroleum subsequently answered the complaint and filed a motion for summary judgment that attached the NTSB report as an exhibit.

¶8. On April 8, 2013, Hammons filed a motion for leave to file an amended complaint. On April 17, 2013, the court entered an agreed order granting Hammons's motion. On April 30, 2013, Hammons filed a twenty-six page amended complaint that purported to identify Defendants A through F from the original complaint as follows: Metal Craft Inc.; Wade C. Navarre and Navarre Fabrication (collectively, "Navarre"); Velcon Filters LLC; Knappco Corporation; and "Wilden."[2] The amended complaint alleged that Metal Craft and Navarre manufactured the fuel truck and fuel compartments used to fuel the helicopter; the amended complaint further alleged, for the first time, that the truck and compartments were defective. The amended complaint alleged that Velcon Filters manufactured a fuel filter on the fuel truck; the amended complaint further alleged, for the first time, that the filter was defective. The amended complaint alleged that Knappco manufactured the lid on the fuel truck's fuel

_____

[2] "Wilden" subsequently identified itself as Wilden Pump and Engineering LLC.

tank; the amended complaint further alleged, for the first time, that the lid was defective. Finally, the amended complaint alleged that Wilden manufactured the fuel truck's pump; the amended complaint further alleged, for the first time, that the pump was defective.

¶9.    Navarre, Velcon Filters, Knappco, and Wilden all filed motions to dismiss and/or for summary judgment. They argued that Hammons's claims against them were barred by the statute of limitations because the original complaint did not properly identify them as fictitious parties pursuant to Mississippi Rule of Civil Procedure 9(h) and, therefore, the amended complaint's allegations against them did not relate back to the date of the original complaint. Knappco and Wilden also argued that the claims against them should be dismissed due to insufficient service of process.[3] It does not appear that Metal Craft was ever served, and it never entered an appearance.

¶10.    In response to the defendants' motions, Hammons's attorney submitted an affidavit that stated in part:

> I was associated on or about February 9, 2011. I was asked to investigate and prosecute a claim, if one existed, against those individuals or entities responsible for the accident on October 25, 2009.
>
> . . . I immediately began to research and investigate the accident but was prohibited from making any meaningful investigation whatsoever because of the inability to inspect and test the fuel and the fueling equipment. I was not provided with a description of most of the products involved in the fueling operation; the names and addresses of manufacturers of the parts; or each

---

[3] The circuit court did not address these issues because it dismissed all claims against Knappco and Wilden based on the statute of limitations. Knappco and Wilden raise these issues again on appeal as alternative grounds for affirmance. We need not address these issues since we hold that Hammons's claims are barred by the statute of limitations.

party's roll in the refueling procedure until January of 2013. The NTSB investigator filed his supplemental report on May 26, 2011, and for the first time mentioned potential problems with the fuel supply devices. . . .

. . . The NTSB did not release any of the information until May 26, 2011, and the fuel equipment used by Provine Helicopter was not made available to the Plaintiff until approximately January of 2013 . . . . Only after suit was filed and after Scott Petroleum partially responded to discovery requests was it revealed that [Metal Craft, Navarre, Velcon Filters, Knappco, and Wilden] were potentially additionally responsible for the October 25, 2009 accident . . . .

I did not receive . . . the responses to Freedom of Information requests [from the NTSB/FAA] until April of 2013. A copy of my Freedom of Information request letter dated March 6, 2013, is attached hereto . . . .

¶11. The circuit court subsequently held a hearing on the defendants' motions to dismiss or for summary judgment and entered an opinion and order granting summary judgment in favor of Navarre, Velcon Filters, Knappco, and Wilden. The court certified its order as final pursuant to Mississippi Rule of Civil Procedure 54(b).

## ANALYSIS

¶12. A motion for summary judgment "shall be rendered forthwith if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." M.R.C.P. 56(c). We review an order granting or denying summary judgment de novo. *Peoples Bank of Biloxi v. McAdams*, 171 So. 3d 505, 508 (¶10) (Miss. 2015). When we consider issues of law, such as statutes of limitations, we also apply a de novo standard of review. *Id.* Finally, the "application of the Mississippi Rules of Civil Procedure in this case is a question of law," which we also review de novo. *Veal*, 955 So. 2d at 845

7

(¶6). We are "bound to follow the plain and ordinary meanings of the Rules of Civil Procedure." *Id.*

¶13. In this case, the circuit court properly applied clear and controlling Mississippi Supreme Court precedent in determining that the attempted substitution of Navarre, Velcon Filters, Knappco, and Wilden failed to comply with Mississippi Rule of Civil Procedure 9(h). Indeed, Hammons attempted to utilize Rule 9(h) in precisely the manner that the Supreme Court held was improper in *Veal*, 955 So. 2d at 845-47 (¶¶8-15). Because these defendants were not properly added pursuant to Rule 9(h), the claims against them do not relate back to the original complaint and are barred by the statute of limitations.

## I.     Rule 9(h)

¶14. Mississippi Rule of Civil Procedure 9(h) provides:

> When a party is ignorant of *the name* of an opposing party and so alleges in his pleading, the opposing party may be designated by any name, and *when his true name is discovered* the process and all pleadings and proceedings in the action may be amended *by substituting the true name* and giving proper notice to the opposing party.

(Emphasis added). Thus, a plaintiff may file a complaint alleging that "fictitious parties" are liable for his injuries. When a plaintiff makes *proper* use of Rule 9(h), the substitution of a defendant's true name for a fictitious name relates back to the date of the original complaint. M.R.C.P. 15(c)(2).

### A.     *Veal*

¶15. In *Veal*, the Supreme Court provided clear and specific guidance as to the meaning

8

of Rule 9(h). The Court's discussion of the issue is directly applicable to the present case:

> [W]here a plaintiff wishes to file suit against a defendant whose name is not known, the suit may be filed by providing the defendant a fictitious name. Rule 9(h) is not intended to serve as an insurance policy to plaintiffs who wish to protect themselves in case they discover new defendants in the course of litigation. Rule 9(h) authorizes the plaintiff to deviate in only one respect from the requirements of the Mississippi Rules of Civil Procedure in bringing a claim. That is, the plaintiff is allowed to use a fictitious name, rather than the true name of the defendant. In other words, the purpose of Rule 9(h) is to allow a plaintiff to proceed with a lawsuit where the plaintiff knows and can articulate the wrongful conduct of, and claims against, the fictitious party, but simply does not know that party's name.

> Rule 9(h) does not say that a plaintiff may include a fictitious party because the plaintiff suspects that there *might* be someone out there who *might* have engaged in conduct which *might* be actionable. For instance, if the plaintiff knew that a nurse was assisting a doctor with a procedure and that the nurse engaged in negligent conduct, the plaintiff is not prevented from proceeding with litigation against the nurse simply because the plaintiff does not know the name of the nurse. The plaintiff may sue "Nurse X" and upon learning the nurse's name, substitute it for the fictitious party under Rule 9(h).

> However, where a plaintiff suspects that there might have been others involved in the procedure who might have been negligent, but is, at the time suit is filed, unaware of who they are or what negligent act they are alleged to have committed, the plaintiff may not include a fictitious party in the complaint. This Court has previously stated that "the purpose of Rule 9(h) is to provide a mechanism to bring in responsible parties, *known*, but unidentified, who can only be ascertained through the use of judicial mechanisms such as discovery."

*Veal*, 955 So. 2d at 845-46 (¶¶9-11) (emphasis in original) (quoting *Ralph Walker Inc. v. Gallagher*, 926 So. 2d 890, 896-97 (¶10) (Miss. 2006)); *accord D.P. Holmes Trucking LLC v. Butler*, 94 So. 3d 248, 253-54 (¶¶15-16) (Miss. 2012) (quoting *Veal,* 955 So. 2d at 846 (¶¶10-11)); *Price v. Clark*, 21 So. 3d 509, 525-26 (¶43) (Miss. 2009) ("[A]t the time the

9

original complaint was filed, Price neither knew the identities of the parties, *nor was she aware of any facts giving rise to any cause of action against such unknown individual or corporate entity*; therefore, the trial court did not err in finding that Price's substitution did not comport with the purpose of Rule 9(h)." (emphasis added)); *Long v. Mem'l Hosp. at Gulfport*, 969 So. 2d 35, 42 (¶21) (Miss. 2007) ("One of the benefits of Rule 9(h) is to allow a plaintiff, *who is aware of his cause of action against a defendant* but ignorant of the defendant's identity, to name a fictitious party as a defendant in order to use the court's resources to discover her true identity." (emphasis added) (citing *Veal*, 955 So. 2d at 845-46)); *Miller ex rel. Miller v. Engelhard Corp.*, 95 So. 3d 740, 743 (¶8) (Miss. Ct. App. 2012); 1 Jeffrey Jackson et al., *Mississippi Civil Procedure* § 6:12 (2016) ("The key [to Rule 9(h)] is that the plaintiff, though ignorant of the identity of the responsible party, must have know at the time she sued the John Doe defendant that she had a claim. As the [S]upreme [C]ourt sensibly noted in *Veal* . . . Rule 9(h) is not an 'an insurance policy to plaintiffs who wish to protect themselves in case they discover new defendants in the course of litigation.' The plaintiff who sues a John Doe defendant, unaware of what claims she might have against unknown parties, cannot—after the period of limitations has run—use Rule 9(h) to avoid the legitimate impact of limitations.").

¶16. In *Veal*, the Supreme Court also applied this discussion of Rule 9(h) in a manner that bears directly on the present case. In that case, the plaintiff filed a wrongful-death complaint alleging negligence and other claims against a nursing home's administrator and licensee, as

well as ten "John Does" and ten more "Unidentified Entities." *Veal*, 955 So. 2d at 844 (¶2).

With respect to the fictitious entities, the original complaint alleged as follows:

> Said Defendants are named pursuant to [Rule] 9(h), insofar as their acts and/or omissions were negligent and/or otherwise tortious with respect to the care and treatment of, or in the staffing, supervision, administration and direction of the care and treatment of, [the deceased] during her residency at AUTUMN LEAVES NURSING HOME. Alternatively, said Defendants are liable for the negligent and/or otherwise tortious acts and/or omissions of others with respect to the care and treatment of [the deceased] during her residency at AUTUMN LEAVES NURSING HOME.

*Id.* at 846 (¶13).

¶17.    As the Supreme Court explained, "[t]hese general allegations provide[d] no indication that Veal was aware of the existence of any of the additional defendants added" in her subsequent amended complaint. *Id.* at (¶14). Rather, "Veal simply attempted to substitute newly discovered defendants for the previously named fictitious parties." *Id.* In her amended complaint, "Veal not only added new allegations against the[] 'substituted' defendants, *but also included new facts in support of [her] allegations*." *Id.* (emphasis added). Veal alleged, for the first time, that these new defendants—various corporate entities, lenders, and bondholders—were negligent in their "operation, oversight, and/or control" of the nursing home. *Id.* Veal also added a new "eight-page factual summary" detailing her new allegations against these defendants and their alleged liability based on new theories, such as "lender liability." *Id.* at 846-47 (¶14). Having compared the original complaint to the amended complaint, the Supreme Court held that "[b]ecause these substituted defendants were not fictitious parties, they could not have been simply substituted

11

in accordance with the provisions of Rule 9(h)." *Id.* at 847 (¶15).

¶18.    *Veal*'s discussion and analysis fits this case to a "T."  In the original complaint in the present case, Hammons did not even pretend to know of the existence of any other parties whose wrongful conduct might have contributed to his injuries.  The complaint expressly purports to name fictitious parties as placeholders for unknown entities "whose true identities [were] unknown . . . *and whose liability to [Hammons was] unknown*" but might be "ascertained" sometime later.  (Emphasis added).  The original eleven-page complaint says absolutely nothing about what these entities supposedly did or the basis of their alleged liability to Hammons.  To assert claims against new defendants, Hammons's amended complaint had to expand to twenty-six pages.

¶19.    Hammons's original complaint alleged only that Scott Petroleum supplied defective fuel—and, indeed, specifically alleged that there was no substantial change in the condition of the fuel between the time it left Scott Petroleum's control and the time of the crash.  The original complaint does not allege or articulate any other wrongful conduct by any other party, known or unknown.  In contrast, the amended complaint includes allegations that the fuel truck and its fuel compartments, fuel filters, fuel pump, and fuel tank lid were all defective and caused the fuel to become contaminated *after* it left Scott Petroleum's control.  Hammons's original complaint does not include even the slightest suggestion of these claims.  Under these circumstances, Navarre, Velcon Filters, Knappco, and Wilden "were not fictitious parties"—they were altogether new parties—and "they could not have been simply

12

substituted in accordance with the provisions of Rule 9(h)." *Veal*, 955 So. 2d at 847 (¶15).

¶20. The dissent offers no persuasive basis for distinguishing *Veal*. The dissent says that the plaintiff in *Veal* "attempted to assert entirely new theories of liability," whereas Hammons supposedly "continued to assert a products-liability claim for faulty fuel found in his original complaint . . . and maintains that theory of liability, though more detailed, against the appellees." *Post* at (¶¶46, 48). But Hammons's amended complaint is not a more refined version of the original complaint. The amended complaint is a vastly expanded lawsuit with allegations of defects in *new and different products* (not just "faulty fuel") that *directly contradict* the sole theory of the original complaint.[4] This is no different from the plaintiff in *Veal*, who "continued" to allege the same injuries due to the same negligent care at the same nursing facility in a "more detailed" amended complaint that sought to blame new parties for the alleged negligent care and injuries.

¶21. The dissent also notes that *Veal* involved a "second amendment to [the] original complaint" and that in this case Hammons was granted leave to file his amended complaint, which was his first amendment. *Post* at (¶46).[5] But the dissent does not say why either fact matters. As *Veal* explains, "leave of court is not required" for a *proper* substitution pursuant

---

[4] As noted above, the original complaint specifically alleged that "[t]he engine fuel provided by Defendant, Scott Petroleum, was expected to and did reach Plaintiff . . . without substantial change in [its] condition from the time the fuel left the places of manufacture and/or processing until the time of the accident on October 25, 2009."

[5] Hammons was granted leave to file an amended complaint before any of the appellees had been made parties to the lawsuit. It is hardly surprising that Scott Petroleum, the only defendant then in the case, agreed to add alternative potentially liable parties.

13

to Rule 9(h). *Veal*, 955 So. 2d at 846 (¶12). This distinction is irrelevant.

¶22. The dissent also seems to imply that *Veal* is somehow a lesser precedent because the plaintiff in that case raised a different issue in her interlocutory appeal. *Post* at (¶46). However, *Veal* clearly held that the new defendants in that case were not properly substituted under Rule 9(h). *Veal*, 955 So. 2d at 847 (¶15). This holding was essential to the Court's affirmance of the order dismissing those defendants. *Id.* at 845 (¶8).[6]

¶23. Finally, the dissent claims that this decision will "essentially wipe out Rule 9(h)" and force "plaintiffs to risk sanctions under both [Mississippi Rule of Civil Procedure 11] and the [Litigation Accountability Act]." *Post* at (¶50). This simply is not the case. To begin with, there is nothing new in this opinion. It is a straightforward application of a clearly and deliberately written Mississippi Supreme Court opinion. Moreover, *Veal* only required Hammons to assert claims based on defects in the fuel truck and its components prior to the running of the statute of limitations. He could have asserted those claims against fictitious parties and discovered their true names later. There is no dispute that Scott Petroleum sent Hammons a copy of the NTSB report, which Hammons admits pointed to issues with the fuel truck and its components, six months before the statute of limitations expired. This report—which the NTSB had published almost a year earlier, before Hammons filed his

---

[6] The Supreme Court specifically stated: "In addressing the question presented, we *must* first determine whether 'John Does 1 through 10,' and 'Unidentified Entities 1 through 10' were truly 'fictitious parties,' so as to come under the purview of Rule 9(h). This, in turn, *requires* that we examine whether [the added defendants] are legitimate substitutions for the fictitious parties named in the complaint, or instead, are new parties brought into the litigation." *Veal*, 955 So. 2d at 845 (¶8) (emphasis added).

14

*original* complaint—gave Hammons all the information that he needed to comply with *Veal*.

¶24.    Paragraph 3 of Hammons's original complaint (reprinted above) could be cut-and-pasted into in *any* complaint in *any* tort case.  *Veal* holds such boilerplate does not satisfy Rule 9(h)—that the original complaint must at least "articulate the wrongful conduct of, and claims against, the fictitious party."  *Veal*, 955 So. 2d at 845-46 (¶9).  The dissent's argument to the contrary would permit any tort plaintiff to create his own "discovery rule" and toll the statute of limitations simply by cutting-and-pasting the above-quoted paragraph.  That result would be contrary to the Supreme Court's holding and opinion in *Veal* and, as discussed *infra*, the Court's interpretation of the applicable statute of limitations.

¶25.    The bottom line is that we are bound to follow the Supreme Court's holdings and its clear discussion and application of Rule 9(h) in *Veal*.  In the circuit court, Hammons's counsel acknowledged this.  The circuit judge specifically asked him whether he was asking her "to ignore" what the Supreme Court had held in *Veal*.  Counsel candidly answered, "I don't think you can ignore the Supreme Court.  I think maybe the thing . . . to do is . . . .  I would like to take this to the Supreme Court.  So maybe you should grant their motions to dismiss . . . or [for] summary judgment – and let us go to the Supreme Court . . . ."  We cannot ignore the Supreme Court either.  Hammons's argument that *Veal* was wrong and should be reconsidered must be presented to that Court.

### B.      The "*Womble* Line"

¶26.    The dissent says that, rather than following *Veal*, it is following "the *Womble* line of

15

cases," which supposedly consists of *Womble v. Singing River Hospital*, 618 So. 2d 1252 (Miss. 1993), *Doe v. Mississippi Blood Services Inc.*, 704 So. 2d 1016 (Miss. 1997), and *Rawson v. Jones*, 816 So. 2d 367 (Miss. 2001). However, nothing in those cases requires or permits us to ignore the Supreme Court's more recent and directly on-point ruling and analysis in *Veal*.

¶27. In *Womble*, citing a California case and an Alabama case, the Court stated,

> It is a principle of general application . . . that ignorance of the opposing party for fictitious party practice extends beyond mere lack of knowledge of the opposing party's name. Even if the plaintiff knows the true name of the person, he is still ignorant of his name if he lacks knowledge of the facts giving him a cause of action against that person.

*Womble*, 618 So. 2d at 1267. However, in the two sentences immediately following, the Court also stated: "Womble admits that no fair construction of the pleadings would lead to the conclusion that Dr. Calhoun was identified [in the original complaint], even as a John Doe. For that reason this rule cannot save the action against him[.]" *Id.* Thus, even in *Womble*, the Supreme Court held a plaintiff cannot proceed under Rule 9(h) if the original complaint fails to articulate any identifying wrongful conduct by the later-named party. That is what Hammons did in this case.

¶28. In *Doe*, the Supreme Court held that the plaintiff failed to satisfy Rule 9(h) because she improperly substituted a new defendant for a defendant that she misidentified in the original complaint; she did *not* substitute the new defendant for a fictitious defendant. *Doe*, 704 So. 2d at 1017-18 (¶¶7-10) ("[T]he amended complaint simply replaced all references

16

to United Blood Services with Mississippi Blood Services, Inc."). The Court also held that the plaintiff failed to satisfy Rule 9(h) because she did not exercise reasonable diligence to learn the identity of the new defendant. *Id.* at 1018-19 (¶¶11-14). Thus, the Court affirmed the circuit court's granting of summary judgment based on the statute of limitations. *Id.* at 1019 (¶¶15-17). *Doe* does not repeat the above-quoted passage from *Womble*.

¶29. Finally, in *Rawson*, a medical malpractice case, the Supreme Court held that the plaintiff could not substitute a doctor under Rule 9(h) because she had all of the facts that she needed to assert a claim against the doctor shortly after the alleged malpractice and well before she filed suit. *See generally Rawson*, 816 So. 2d at 369-71 (¶¶5-12). The Court repeated the above-quoted passage from *Womble*, *see id.* at 369 (¶7), but again, the Court held that the plaintiff failed to satisfy Rule 9(h)'s requirements and that the statute of limitations had run as a result. *See id.* at 371 (¶12).

¶30. In summary, two of the opinions in the so-called *Womble* line contain language that, read in isolation, lends support to the dissent's argument. However, in each of these cases, the Supreme Court ultimately held that the plaintiff failed to satisfy the requirements of Rule 9(h). The dissent cites no decision of the Mississippi Supreme Court—or any other court applying Mississippi law—that has permitted an amendment pursuant to Rule 9(h) on facts comparable to the present case. In contrast, the Supreme Court's more recent opinion in *Veal* interpreted and applied Rule 9(h) to facts that clearly parallel the instant case. A fair reading

17

of *Veal* inescapably leads to the conclusion that it controls the outcome here.[7]

## II. The Statute of Limitations

¶31. Hammons's claims are subject to the three-year "catch-all" statute of limitations. Miss. Code Ann. § 15-1-49. His amended complaint asserting claims against Navarre, Velcon Filters, Knappco, and Wilden was filed more than three years and six months after the helicopter crash. Therefore, those claims are time-barred unless they relate back to the date of the original complaint. "An amendment pursuant to Rule 9(h) . . . relates back to the date of the original [complaint]," M.R.C.P. 15(c)(2), but *only* if it is a proper substitution for a fictitious party within the meaning of the Rule. *Veal*, 955 So. 2d at 847 (¶15). Because Hammons did not comply with Rule 9(h), his claims against Navarre, Velcon Filters, Knappco, and Wilden do not relate back to the date of the original complaint.[8]

¶32. Hammons makes an alternative argument that his claims against these entities did not accrue until he discovered their identities and their alleged wrongful conduct. This argument is contrary to the language of the applicable statute of limitations and Supreme Court

---

[7] Like the circuit court, we conclude that "Defendants A-F" were not true fictitious parties and that the appellees were not legitimately substituted under Rule 9(h). *See Veal*, 955 So. 2d at 845 (¶8). A plaintiff seeking to take advantage of Rule 9(h) must also show that he "exercised reasonable diligence" to ascertain the identities of fictitious parties. *See Doe*, 704 So. 2d at 1019 (¶13). "[T]his court will give great deference to [a] lower court['s] finding that [a] plaintiff [did or] did not exercise reasonable diligence." *Id.* In this case, the circuit court did not make findings on this issue because it was unnecessary for the court to reach the issue. We also need not address the issue.

[8] Hammons does not argue that the claims relate back pursuant to the general rules applicable to new parties added by amendment. M.R.C.P. 15(c)(1)–(2).

18

precedent interpreting the statute. Section 15-1-49(2) provides that "[i]n actions . . . which involve *latent injury or disease*, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, *the injury*." (Emphasis added). This case does not involve a "latent injury or disease." Hammons's injury was known to him immediately.

¶33. The Mississippi Supreme Court has addressed this issue directly. The Court started with the observation that "[n]ot all discovery rules are created equal." *Angle v. Koppers Inc.*, 42 So. 3d 1, 5 (¶9) (Miss. 2010) (quoting *Caves v. Yarbrough*, 991 So. 2d 142, 154 (¶48) (Miss. 2008)) (alteration omitted). Therefore, "[i]n analyzing what the plaintiff must discover in order to trigger the running of the statute of limitations, we ordinarily are guided by the wording of a statute's discovery provision." *Id.* In *Angle*, the Supreme Court held that based on "the plain language" of section 15-1-49, a cause of action subject to the catch-all statute of limitations "accrue[s] upon discovery of the injury, *not discovery of the injury and its cause*." *Id.*; *see also id.* at 7 (¶18) ("No provision of Section 15-1-49 provides that a plaintiff must have knowledge of the cause of the injury before the cause of action accrues, initiating the running of the statute of limitations."). Therefore, Hammons's claims all accrued on the date of his injury, which means that claims he asserted three years and six months later were barred by the statute of limitations.

¶34. Hammons's final argument is that the statute of limitations was tolled by Mississippi Code Annotated section 15-1-63 (Rev. 2012), which states:

19

If, after any cause of action has accrued in this state, the person against whom it has accrued be absent from and reside out of the state, the time of his absence shall not be taken as any part of the time limited for the commencement of the action, after he shall return.

Our Supreme Court has interpreted this tolling provision

to require that a plaintiff seeking to benefit from it must have been unable to effect service on the defendant for the period which it is claimed that the statute is tolled. That is, the defendant must have left the state and not be amenable to service under a long-arm statute or other means, because for example, his whereabouts are unknown. The period of time that the defendant's whereabouts are unknown is deducted from the period of the statute which would otherwise have run, in effect, adding that time to the statute of limitations. However, the statute of limitations is not tolled where the plaintiff knew or should have known of the defendant's whereabouts. *The burden of proof that the defendant was absent and not amenable to service is on the plaintiff.*

*Sullivan v. Trustmark Nat'l Bank*, 653 So. 2d 930, 931-32 (Miss. 1995) (emphasis added).

¶35. There is no evidence that Navarre, Velcon Filters, Knappco, or Wilden was not "amenable to service under a long-arm statute or other means" at any time during the limitations period. In fact, Hammons served or attempted service on all of them soon after he filed his amended complaint. The tolling provision in section 15-1-63 has never been applied to a defendant who was amenable to service of process simply because, as Hammons claims here, the defendant's alleged wrongful conduct was not known to the plaintiff. Rather, as *Sullivan* indicates, the statute of limitations is tolled because—and only if—the defendant has removed himself from the State *and the reach of service of process*.

¶36. Hammons's argument that the statute applies whenever a plaintiff is unaware of a defendant's alleged wrongful conduct would discriminate against nonresident defendants

20

despite their amenability to service of process. There is no authority to support his interpretation of the statute, which would raise a serious constitutional question under the U.S. Supreme Court's Commerce Clause cases. *See Bendix Autolite v. Midwesco Enters. Inc.*, 486 U.S. 888, 894 (1988) (holding that an Ohio tolling provision violated the Commerce Clause and could not be justified "as a means of protecting . . . residents from corporations who become liable for acts done within the State but later withdraw from the jurisdiction, for it [was] conceded . . . that the Ohio long-arm statute would have permitted service on [the defendant] throughout the period of limitations"). Hammons submitted no evidence sufficient to meet his burden of proof that these defendants were not amenable to service during the limitations period. Accordingly, the applicable statute of limitations was not tolled pursuant to section 15-1-63.

## CONCLUSION

¶37.    The amended complaint's attempt to assert claims against Navarre, Velcon Filters, Knappco, and Wilden was not a legitimate substitution of fictitious parties pursuant to Rule 9(h). Therefore, Hammons's claims against those entities do not relate back to the date of his original complaint and are barred by the applicable statute of limitations. The Supreme Court's opinion in *Veal* is on point and permits no other conclusion. Therefore, we affirm the order of the circuit court granting the appellees' motions for summary judgment.

¶38.    **THE JUDGMENT OF THE LEFLORE COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**GRIFFIS, P.J., CARLTON AND FAIR, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. GREENLEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., IRVING, P.J., ISHEE AND WESTBROOKS, JJ.**

**GREENLEE, J., DISSENTING:**

¶39. I respectfully dissent.

¶40. The question before us is whether the circuit court was correct in finding that the substituted defendants in Hammons's amended complaint did not relate back to the original complaint so that the statute of limitations had run on those defendants.

¶41. Mississippi Rule of Civil Procedure 9(h) states:

> When a party is ignorant of the name of an opposing party and so alleges in his pleading, the opposing party may be designated by any name, and when his true name is discovered the process and all pleadings and proceedings in the action may be amended by substituting the true name and giving proper notice to the opposing party.

Mississippi Rule of Civil Procedure 15(c)(2) states that "[a]n amendment pursuant to Rule 9(h) is not an amendment changing the party against whom a claim is asserted and such amendment relates back to the date of the original pleading."

### I. Standard for Fictitious-Party Practice

¶42. The majority utilizes the fictitious-party-practice standard and analysis focused on *ignorance* of just the names of the responsible parties. The use of fictitious names in a complaint for unidentified parties pursuant to Rule 9(h) has been interpreted differently. The majority relies on, and the lower court utilized, the interpretation found in *Veal v. J.P. Morgan Trust Co. N.A.*, 955 So. 2d 843, 845-46 (¶¶9-10) (Miss. 2007).

22

¶43.    Hammons asserts that the interpretation found in a line of cases under *Womble v. Singing River Hospital*, 618 So. 2d 1252, 1267 (Miss. 1993) (declined to follow on unrelated grounds by *Sparks v. Kim*, 701 So. 2d 1113, 1115 (¶7) (Miss. 1997)), should control. A review shows that the most utilized interpretation in our jurisdiction for the posture of the case before us is from *Womble*, *Rawson v. Jones*, 816 So. 2d 367, 369 (¶¶7-8) (Miss. 2001), and *Doe v. Miss. Blood Services Inc.*, 704 So. 2d 1016, 1018-19 (¶¶11-14) (Miss. 1997). *See Price v. Clark*, 21 So. 3d 509, 526 (¶¶44-45) (Miss. 2009); *Davenport v. Hertz Equip. Rental Corp.*, 187 So. 3d 194, 199 (¶14) (Miss. Ct. App. 2016); *Turnage v. McConnell Tech.*, No. 16-60291, 2016 WL 7209719, at *2 (5th Cir. Dec. 12, 2016); *Pruitt v. Invacare Corp.*, No. 2:13CV293-TSL-JCG, 2014 WL 5465342, at *5 (S.D. Miss. Oct. 28, 2014); *Scoggins v. Boston Scientific Corp.*, No. 2:08CV032-P-A, 2008 WL 1821498, at **2-3 (N.D. Miss. Apr. 22, 2008).

¶44.    Using the *Womble-Doe* analysis, the Mississippi Supreme Court has interpreted Rule 9(h) and given a very clear standard for whether a party is "ignorant" of the "names" of other parties. In *Rawson*, the Supreme Court stated:

> The central inquiry in the case now before us is whether Jones was "ignorant" of the names of Dr. Rawson and The Newborn Group within the meaning of Rule 9(h). We addressed this issue in *Womble v. Singing River Hosp.*, 618 So. 2d 1252 (Miss. 1993), where we stated:
>
> > It is a principle of general application, though, that ignorance of the opposing party for fictitious party practice extends beyond mere lack of knowledge of the opposing party's name. *Even if the plaintiff knows the true name of the person, he is still ignorant of his name if he lacks knowledge of the facts giving*

23

> *him a cause of action against that person*.

> *Id*. at 1267 (emphasis added). This language, however, does not give potential plaintiffs permission to sit on their rights. We extrapolated on *Womble* in *Doe v. Mississippi Blood Servs. Inc.*, 704 So. 2d 1016 (Miss.1997), and held the relation back privilege afforded under Rule 9 requires a plaintiff to actually exercise a reasonably-diligent inquiry into the identities of the fictitious part[ies]. *Id*. at 1019. The purpose of Rule 9(h) is to provide a mechanism to bring in known, but unidentified, responsible parties who may only be ascertained through the use of judicial mechanisms such as discovery. *Id*.

> In *Doe*, we cited with approval our *Womble* holding that due to the reasonable availability of numerous medical records on file at the hospital "a reasonably diligent inquiry by the appellants into the history of the deceased's medical treatment would have revealed to appellants the identities of the persons they sought to identify categorically." *Id*. at 1018 (citing *Womble*, 618 So. 2d at 1267). Such is the case here.

*Rawson*, 816 So. 2d at 369 (¶¶7-8).

¶45.    The *Veal* standard, as applied by the circuit court in its opinion, holds that Hammons must know and be able to articulate the wrongful conduct of the unascertained parties and lack only knowledge of their names, citing to *Veal*, 955 So. 2d at 845-46 (¶¶9-10). The appellees rely on the *Veal* case for arguing that they were not unascertained parties within the meaning of Rule 9(h). The opinion in *Veal* did not overrule *Womble*, *Rawson*, or *Doe* (the "*Womble*" line of cases), nor did it mention them.

¶46.    In review of *Veal*, I find it distinguishable from the *Womble* line. In *Veal*, the issue on appeal was "whether Rule 9(h) require[d] leave of the court before a fictitious party may be substituted" pursuant to Mississippi Rule of Civil Procedure 21. *Veal*, 955 So. 2d at 845 (¶6). The court found that it did not. It also went further than the issues raised on appeal and

24

found that Veal's amendment did not properly substitute fictitious parties. *Id*. In *Veal*, the original defendants were a nursing home's administrator and licensee, ten "John Does," ten "Unidentified Entities," and two corporations alleged to be in control of the nursing home. *Id*. at 844 (¶2). The original complaint alleged "negligence, medical malpractice, malice and/or gross negligence, fraud, statutory survival, and statutory wrongful death claims against all of the defendants." *Id*. The amendment attempted to assert liability against banking corporations, trusts, and their trustees theorizing that they exercised control over the corporations that controlled the nursing home and other original defendants. Further, the appellant in *Veal* attempted to assert entirely new theories of liability in the second amendment to his original complaint.

¶47.   *Veal*'s facts reveal an obvious fishing expedition in search of good defendants against whom liability could be asserted. In *Veal*, the plaintiffs attempted an amendment to sue the nation's largest bank, and world's third largest by assets, in a nursing-home-wrongful-death case. In the case before us, Hammons's original complaint asserted that the fuel was defective.

¶48.   Here, Hammons moved for leave of court, which was granted to file the only amendment, and the issue on appeal is whether the parties at issue were unidentified under Rule 9(h). Hammons's amended complaint continued to assert a products-liability claim for faulty fuel found in his original complaint ("The fuel pumped into the aircraft in question was defective and unreasonably dangerous.") and maintains that theory of liability, though

more detailed, against the appellees. Also, here, leave of court was granted, and this was Hammons's only amendment to his original complaint.

¶49. Notwithstanding those distinguishing characteristics of *Veal*, the *Womble* line's interpretation of Rule 9(h) is the appropriate course of action being more clearly in line with the facts and proceedings below. The interpretation within the *Womble* line of cases more closely applies herein as the substitution of newly identified parties under 9(h) arose under the same conduct, transaction, or occurrence found in the original complaint, as is contemplated under 15(c). The *Womble* line holds "that ignorance of the opposing party for fictitious party practice extends beyond mere lack of knowledge of the opposing party's name. Even if the plaintiff knows the true name of the person, he is ignorant of his name if he lacks knowledge of the facts giving him a cause of action against the person." *Womble*, 618 So. 2d at 1267. The Mississippi Supreme Court, as well as this Court, has continued to acknowledge the *Womble* interpretation post-*Veal*. *See Price*, 21 So. 3d at 526 (¶¶44-45); *Davenport*, 187 So. 3d at 199 (¶14). Even our federal courts have recognized the *Womble-Rawson-Doe* standard as the prevailing law. *See Turnage*, 2016 WL 7209719, at *2; *Pruitt*, 2014 WL 5465342, at *5; *Scoggins*, 2008 WL 1821498, at **2-3; *Essary v. Walmart Stores Inc.*, No. 199CV338SA, 2000 WL 33907699, at *3 (N.D. Miss. Sept. 19, 2000).

¶50. The majority's analysis relies solely on *Veal*'s standard and logic as controlling precedent. The majority's analysis does not consider what the practical effects of such a holding would be to what appears to be a clear meaning of Rule 9(h) and 15(c). It

26

furthermore does not apply the standard and logic afforded by the *Womble-Rawson-Doe* line of cases. The majority's reasoning would place similarly situated counsel in a quandary, in particular with Mississippi Rule of Civil Procedure 11 as well as the Litigation Accountability Act (LAA), Miss. Code Ann. §§ 11-55-1 to -15 (Rev. 2012). The result of the majority's decision would be to essentially wipe out Rule 9(h) and use of fictitious parties as anticipated by the Mississippi Rules of Civil Procedure. By its decision on one case, the majority has moved us toward abolishing use of fictitious parties in pleadings without a lengthy advisory process used to amend the civil rules. Thus, the majority tells plaintiffs to risk sanctions under both Rule 11 and the LAA by literally guessing as to defendants' liabilities without being afforded a reasonable opportunity to discover their true liabilities, let alone their true names, so that the plaintiffs maybe will guess rightly as to what caused their injuries.

¶51.    The standard articulated in *Womble*, *Rawson*, and *Doe*, et al., contains a more compelling logic applicable to the proceedings in the case before us. Furthermore, it comports with the language of Rules 9(h) and 15(c)(2). Absent a direct overruling, our job is to utilize the Supreme Court's precedent that best fits the facts and issues before us.

¶52.    In response to our reliance on *Womble*, *Rawson*, and *Doe*, the majority first says that we are misguided because the plaintiff did not "win" in any of those cases. We do not rely on precedent based on the prevailing party, but based on the law that it sets forth. *But see* *Scoggins*, 2008 WL 1821498, at **3-4 (finding that plaintiff had properly substituted

27

fictitious parties pursuant to Rule 9(h)).

¶53. Next, the majority notes that *Veal* was more recently decided than the *Womble-Rawson-Doe* line. Our research found *Veal* cited seven times. Those cases differ from the case at hand, and none cites *Veal* for the standard used by the majority's opinion that Rule 9(h) allows "a plaintiff to proceed with a lawsuit where the plaintiff knows and can articulate the wrongful conduct of, and claims against, the fictitious party, but simply does not know that party's name." *Veal*, 955 So. 2d at 845-46 (¶9); *see Meeks v. Hologic Inc.*, 179 So. 3d 1127, 1132 (¶¶17-18) (Miss. 2015) (discussed Rules 15 and 21, not Rule 9(h)); *Heflin v. Merrill*, 154 So. 3d 857, 867, n.25 (Miss. 2014) (discussed Mississippi Rule of Civil Procedure 10(a), not Rule 9(h)); *Lone Star Indus. Inc. v. McGraw*, 90 So. 3d 564, 568 (¶¶13-16) (Miss. 2012) (must obtain leave of court to amend to substitute defendants); *Lone Star Indus. Inc. v. McGraw*, 2010-IA-01005-SCT (¶¶12-15, 26) (Miss. Feb. 2, 2012) (decision withdrawn and superseded on rehearing); *D.P. Holmes Trucking LLC v. Butler*, 94 So. 3d 248, 253 (¶¶15-16) (Miss. 2012) (plaintiff named employer individually and not employer officially and, in attempting to add employer in official capacity as fictitious party, plaintiff did not remove any fictitiously named party); *Long v. Mem'l Hosp. at Gulfport*, 969 So. 2d 35, 42 (¶21) (Miss. 2007) (trial court should not have dismissed entire action when there were still two fictitiously named defendants that were parties to the action); *Miller ex rel. Miller v. Engelhard Corp.*, 95 So. 3d 740, 743 (¶¶7-11) (Miss. Ct. App. 2012) (plaintiff did not remove any fictitiously named parties as part of substitution). The only case in which the

28

*Veal* standard adopted by the majority has previously been applied is *Veal* itself.

¶54.     The majority argues for *Veal*'s "more recent" approach; however, it is still noted that the *Womble* standard is the prevailing standard. This Court recently reiterated and applied the *Womble* standard, subject to a reasonable-diligence test:

> Davenport cites *Womble v. Singing River Hospital*, 618 So. 2d 1252 (Miss. 1993) (overruled on other grounds), where the Mississippi Supreme Court established that:
>
> > it is a principle of general application that ignorance of the opposing party for fictitious party practice extends beyond mere lack of knowledge of the opposing party's name. Even if the plaintiff knows the true name of the person, he is still ignorant of his name if he lacks knowledge of the facts giving him a cause of action against that person.
>
> *Id*. at 1267. However, we note that our supreme "court has also acknowledged a reasonable-diligence test to be applied when substituting unknown parties pursuant to Rule 9(h)." *Bedford Health Props., LLC v. Estate of Williams ex rel. Hawthorne*, 946 So. 2d 335, 342 (¶13) (Miss. 2006).

*Davenport*, 187 So. 3d at 199 (¶14). The only other court, of any jurisdiction, to more recently apply either standard is the U.S. Court of Appeals for the Fifth Circuit, when it utilized the *Womble-Rawson-Doe* standard. *See Turnage*, 2016 WL 7209719, at *2 ("Mississippi law allows relation back when a named defendant is substituted for a John Doe defendant but only if the plaintiff conducted a reasonably diligent inquiry into the identity of the fictitious party." (citation and quotation marks omitted)) (quoting *Doe*, 704 So. 2d at 1019 (¶13)). *Turnage* goes on to note that "[t]he Mississippi Supreme Court also made a distinction in *Doe* between parties who could only be identified with the help of judicial

29

discovery and those whom a plaintiff could identify through his or her own investigation."
*Id*. (citing *Doe*, 704 So. 2d at 1019 (¶14)).

## II. Reasonably Diligent Inquiry

¶55. The majority discusses when the report by the NTSB was published, which is of limited use in a *Veal* analysis but fundamental to the reasonably-diligent-inquiry test of the *Womble-Doe-Rawson* analysis. Based on our review of the record, the trial court did not reach the issue of whether Hammons conducted a reasonably diligent inquiry into the identities of the unascertained parties. We note that *Rawson* and *Doe* establish that Hammons must still conduct a reasonably diligent inquiry into the identities of the unascertained parties in order to benefit from Rule 9(h). *Rawson*, 816 So. 2d at 369 (¶7) (citing *Doe*, 704 So. 2d at 1019 (¶13)). Therefore the issue as to whether Hammons conducted a reasonably diligent inquiry into the identities of the unascertained parties was not properly before the court, but if our decision was based on the *Womble-Doe-Rawson* caselaw, such analysis by the trial court must still be done.

¶56. *Doe* states that "*Womble* clearly applies a requirement that the plaintiff exercise a reasonably diligent inquiry." *Doe*, 704 So. 2d at 1019 (¶12). Further:

> The relation back privilege provided for fictitious parties under Rule 15(c)(2) requires the plaintiff to actually exercise a reasonably diligent inquiry into the identity of the fictitious party. The trial court's review of whether the plaintiff exercised a reasonably diligent inquiry is to be strict. Upon review of the trial court's findings, this court will give great deference to the lower court finding that the plaintiff did not exercise reasonable diligence. Mississippi already enjoys one of the nation's longest general statute of limitations. This need not be judicially expanded to allow non-diligent plaintiffs the opportunities to

30

sleep on their rights indefinitely.

> The purpose of Rule 9(h) is to provide a mechanism to bring in responsible parties, known, but unidentified, who can only be ascertained through the use of judicial mechanisms such as discovery. It is not designed to allow tardy plaintiffs to sleep on their rights for seven years, make only one telephone call prior to the running of the statute, and then enjoy the benefits of the rule.

*Id*. at (¶¶13-14).

¶57.    The appellees argued heartily that the NTSB's investigation protocol should not have hampered Hammons from earlier discovery of the identity and theory of liability of the defendants. The trial court did not rest its findings on that ground, and its assertion by the appellees appears to be argument rather than based upon the evidence in the record or, at the least, a finding by the court below. The majority cites to the NTSB report being published on May 26, 2011. The majority appears to imply that Hammons had access to that report, which would provide all the information needed to amend the complaint. No such finding was made below as to when Hammons had access to the NTSB report, nor whether it identified any of the defendants and their respective liability. Upon review of an NTSB report found within the record, such does not provide a single name of any defendant. In that report the fuel truck's system is implicated in corrupting the fuel. Hammons originally asserted that the fuel was defective before it was pumped into the helicopter.

¶58.    Thus, for the above-stated reasons, I would find that the trial court did not correctly interpret the meaning of unidentified parties under Rule 9(h). I would find that the *Womble-Rawson-Doe* case line provides the correct interpretation of Rule 9(h) in this case as the

standard to apply, and that that portion of the *Womble-Rawson-Doe* analysis is met. I would not rule on the issue of reasonably-diligent-inquiry analysis because it was not a part of the circuit court's decision. Thus, I would reverse the trial court's decision, and remand for further proceedings consistent with this opinion.

¶59. Therefore, I respectfully dissent.

**LEE, C.J., IRVING, P.J., ISHEE AND WESTBROOKS, JJ., JOIN THIS OPINION.**